UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF CONNECTICUT


– – – – – – – – – – – – – – – x
QAZI T. AZAM                          No.3:18cv1260(AWT)

            Plaintiff

        vs.

YALE UNIVERSITY
                                      HARTFORD, CONNECTICUT
                      Defendant       NOVEMBER 15, 2019
– – – – – – – – – – – – – – – x


MOTION HEARING


    BEFORE:

        HON. ALVIN W. THOMPSON, Senior U.S.D.J.


APPEARANCES:

    FOR THE PLAINTIFF:

        AXELROD & ASSOCIATES
            8 Lunar Drive
            Woodbridge, Connecticut   06525
        BY:  EUGENE N. AXELROD, ESQ.

    FOR THE DEFENDANT:

        CLENDENEN & SHEA
            400 Orange Street
            New Haven, Connecticut   06511
        BY:  KEVIN C. SHEA, ESQ.




                              Corinna F. Thompson, RPR
                              Official Court Reporter

1                      **4:06 PM**

2              THE COURT:  Good afternoon.  Please be seated

3    everyone.

4              MR. AXELROD:  Good afternoon, Your Honor.

5              MR. SHEA:  Good afternoon, Your Honor.

6              THE COURT:  We're here in Docket

7    Number 3:18CV1260, Azam versus Yale University.

8              Could I have counsel state their appearances for

9    the record, please.

10             MR. AXELROD:  For the plaintiff, Eugene Axelrod,

11   Your Honor.

12             THE COURT:  Good afternoon.

13             MR. AXELROD:  Good evening, Your Honor.

14             MR. SHEA:  Good afternoon, Your Honor.  Kevin

15   Shea for the defendant.

16             THE COURT:  Thank you.

17             I think when we spoke on the phone we had a

18   couple of issues.  One was the motion to amend or correct

19   and the other was the motion to compel.  The motion to

20   amend has been withdrawn so I think all that leaves us

21   with is the motion to compel.

22             Have you all had any conversations since we

23   spoke on the phone?

24             MR. AXELROD:  Your Honor, the only conversations

25   we've had were yesterday when I called opposing counsel.

1    Have not had time to review all the documents that we had

2    submitted and attempted to comply.

3              THE COURT:  Okay.

4              MR. AXELROD:  So we have submitted a large

5    number of documents.  We have not had substantive

6    conversation.

7              THE COURT:  Okay.  Mr. Shea.

8              MR. SHEA:  Yes, Your Honor.  Yesterday afternoon

9    we received a supplement of compliance.  It originally

10   apparently was sent Wednesday night.  I was on trial in

11   Hartford on Wednesday.  I was not able to access them from

12   my home Wednesday evening.

13             Attorney Axelrod called me yesterday afternoon

14   and asked if we had everything.  I said I hadn't had a

15   chance to look at anything yet.  It had been seven months

16   since we served the discovery requests.

17             The one thing I had noted is that the documents

18   they sent, including the answers themselves, were sent

19   with only every other page of the document.  Apparently it

20   was a two-sided document so it was scanned incorrectly.

21   So it was resent yesterday afternoon.

22             We have had a chance to look.  There's a large

23   volume of documents.  I'm not sure exactly how responsive

24   or complete those are.

25             It does appear there was some supplementation,

1     but it looks like interrogatories 7 through 11 are still

2     lacking substantive responses in several respects.

3          It's still unclear to me about the motion to

4     amend and now whether there's kind of an end run around

5     that being attempted with the discovery responses, because

6     in their response to Interrogatory 11, which asks about

7     the positions -- This is, as Your Honor may be aware, this

8     is discriminatory failure to hire claim.

9          THE COURT:  I am.  I read through the requests

10    and things so I have a pretty good sense.

11         MR. SHEA:  So the original complaint, Your

12    Honor, to which they say that we are reverting as of their

13    motion to withdraw identified three positions that

14    Mr. Azam said he applied for but did not get.  Up until

15    the time of his deposition, when they tried to amend

16    literally during his deposition to add an additional five

17    positions, those were the three positions we thought this

18    case and this claim was about, including when it was

19    brought to CHRO.

20         Looking through today the amended response to

21    Interrogatories 11, he now appears to add eight additional

22    positions, none of which appear to be the three positions

23    in the complaint.

24         So I don't know if there's 11 positions now

25    being attempted to be added and I don't know if this is a

1    backdoor way to now add those five new positions that they

2    sought to add with the amended complaint so they're going

3    to come here and say, oh, we withdrew the amended

4    complaint but now they're still trying to blow up the case

5    on the other end.

6            If the amended complaint has been withdrawn

7    we'll deal with keeping out these other jobs as a matter

8    of believing that they weren't properly before the Court.

9    But that is one deficit still that needs to be resolved on

10   those answers.

11           The other is for each of those interrogatories,

12   we had targeted actually the three positions that were the

13   only three that had been identified to that point.  And we

14   asked for -- because the allegation, as Your Honor is

15   aware now, was that there were less qualified people not

16   from protected classes who were hired for an interview for

17   these positions.  We asked Mr. Azam to identify who those

18   people were.  There's no identification.  Totally blank.

19   He hasn't identified anybody else who was interviewed.

20   They just say, refer to these documents, refer to these

21   documents, and the documents don't identify it either.

22           So I think Interrogatories 7 through 11 still

23   need to be completed.  We still don't have, and have never

24   received initial disclosures, but I gather they now say,

25   well, since you now have all the information in your

1    interrogatory responses, that's moot.  And I suppose that

2    that probably is because they did say they gave a damages

3    analysis.  They say they have no experts.  So I think with

4    that information it would complete the initial disclosure

5    protocol information.

6         So I think with respect to stuff that we still

7    think we need, I think we're down to 7 to 11 and the areas

8    that I just identified, Your Honor.

9         I just wanted to add one more thing, Your Honor.

10   I do believe there's another item on the docket for today

11   outstanding, which is the plaintiff's motion for extension

12   of time, to which we objected.  Last Friday evening they

13   served discovery requests that they first promised they

14   were going to serve in May, and then they said they were

15   going to serve them in October, then they served them

16   after the deadline with no extension having been granted.

17   We haven't even reviewed them yet, Your Honor, because I

18   was on trial this week, but I don't believe they're

19   properly served because there has been no extension and

20   whenever Your Honor is ready, I'm happy to take that up.

21        MR. AXELROD:  If I may, Your Honor.

22        THE COURT:  Let me just clarify my understanding

23   with respect to one thing.  In terms of the three

24   positions that you're taking about, Mr. Shea, in the

25   complaint, can you steer me to the paragraphs in the

1   complaint.

2           MR. SHEA:  I apologize, Your Honor, because I

3   realized that I only have the three attempted amendments

4   here.

5           THE COURT:  Let me see if these are the three.

6   I'm looking at Paragraph 19, Senior Administrative

7   Assistant II.

8           MR. SHEA:  The June 7, 2016?

9           THE COURT:  Yes.

10          MR. SHEA:  Yes, that's one.  That's the first.

11          THE COURT:  Then I see there was also July 14,

12  2016.

13          MR. SHEA:  That's actually not a position.  I

14  believe that was the notification that he didn't get the

15  June 7th position.

16          THE COURT:  Then would it be October 17, 2016?

17          MR. SHEA:  Correct.  That was the second one.

18          THE COURT:  Assistant University Registrar.

19          MR. SHEA:  Yes.

20          THE COURT:  And then November 7, 2016, again

21  Senior Administrative Assistant II.

22          MR. SHEA:  Yes.  Those were the three positions

23  that we believe to be at issue.

24          THE COURT:  Okay.

25          MR. SHEA:  So when the plaintiff sought to amend

1    the complaint, he did the 27A through E, or whatever he

2    tried to add, all these five new positions.

3         THE COURT:  But when I look at Interrogatory

4    Number 11, it asks the plaintiff to identify the numerous

5    positions that are referred to in Paragraph 26.  I don't

6    think that by answering that interrogatory the plaintiff

7    would be amending the claim.  That would simply be

8    answering the interrogatory.

9         MR. SHEA:  Fair enough.

10        THE COURT:  That's how I would construe that.

11        MR. SHEA:  That's fair enough.  We'll take up

12   whether those positions fit within the parameters or not.

13        Again, a lot of this I'm just processing for the

14   first time myself, Your Honor.

15        THE COURT:  Sure.  No problem.

16        MR. AXELROD:  Your Honor, if I just may.

17        THE COURT:  Yes, Mr. Axelrod.

18        MR. AXELROD:  Thank you, Your Honor.

19        Despite the lengthy statement made in response

20   to our what I thought was a fairly simple question from

21   the Court, the fact is that one looks at the documents.

22   The amended complaint was withdrawn.  Supplemental

23   complaint was withdrawn.  The active complaint -- this is

24   cutting through all of the verbiage that we just heard --

25   the active complaint is the original complaint.  As Your

1    Honor has correctly pointed out, that contains three

2    individuals.  That is what we are talking about, three

3    individuals.  For all of this speaking, speeches, we have

4    cut it back.  There is no A through whatever.  We have

5    endeavored to go back to the original CHRO, Your Honor, to

6    see exactly what that contained, and based upon the CHRO,

7    we have conformed and taken a lot of time and effort to

8    conform it so that this is a clean case.

9         To the extent my colleague is confused or

10   doesn't understand or thinks 7 and 11 are some issue, it

11   would have been helpful if he had let me know that.

12        As far as we know, Your Honor, they are in

13   answer and they are not -- I'm not quoting -- they are not

14   some attempt to achieve something through stealth and

15   darkness in order to pull a fast one on anyone.  I'd like

16   the Court to understand that because I think it's

17   essential.

18        We have produced everything that is in our

19   cupboard, including the things that are in the corner that

20   you don't even want to see to this individual.

21        I'm happy that he has been on trial.  I

22   congratulate him.  The fact of the matter is whether he's

23   on trial or not has nothing to do with the fact that we

24   produced evidence that was requested and required.  I

25   happen to know he has more than one person in his office.

1    And the argument that I'm a busy guy so I can't look at

2    what you did and you didn't give me enough time because

3    I'm a busy guy I would say doesn't bear up.

4         Now, there are three sets of production that

5    were produced and I am attempting here, Your Honor, to

6    comply with 37(a)(1).

7         There was an original sent that went out on

8    August 16th which there was a filing deficiency.

9         There was another set that was produced on

10   October 16th, which defendant found to be deficient,

11   primarily, I think because we said, well, we object, but

12   here it is.

13        The third set was produced on November 13th.

14        This is 2 inches.  The previous one is an inch

15   and a half.  The one before that may very well have issues

16   that needed to be addressed.

17        I would point out that the deficiency letter was

18   sent on December 5th.  The motion to compel for sanctions

19   was filed September 19th without benefit of any

20   conversation.

21        THE COURT:  I think you may have said

22   December 5th.  I think you meant September 5th.

23        MR. AXELROD:  Your Honor, thank you for

24   correcting me.

25        It was sent -- deficiency letter was sent

1    September 5th.  The motion to compel sanctions was

2    September -- I think about two weeks later.  During that

3    time it's required, under Rule 37, despite the verbiage

4    you may hear and how artfully or inartfully it may be

5    phrased, there has been no affidavit -- sorry -- there has

6    been no verbal conversation or compliance with the

7    requirement that there be an affidavit.  It's not there.

8    Counsel attempts to circumvent that by saying he gave us a

9    letter previous that has nothing to do with this

10    requirement under Rule 37.

11          Be that as it may, we have attempted to comply.

12          Now, this is an extraordinary circumstance in

13    this respect, Your Honor.  I have been practicing for

14    40 years and have been before this Court many times, and

15    I've been admitted to the federal courts for 30 years.

16    There are extraordinary circumstances that have resulted

17    in what we have here.

18          In January 1st, the attorney who was in charge

19    of the case abruptly left.  He just left.  He had many,

20    many cases.  He left, claiming that his wife's father

21    was -- had cancer in Brazil, I believe it is, and that he

22    had to go and that he didn't have time to help me make

23    transition.

24          Two weeks prior to that, the ten-year paralegal

25    had left to go to a firm that did personal injury where

1     she made more money.  I'm just pointing out that everybody

2     has a right to move around, but ten years' of experience

3     went out the window.  Four years' of experience went out

4     the window in January.

5             Now, prior to that I had been attempting to

6     give -- to cut back.  I was still in the practice, but I

7     was attempting to cut back.  And the idea was that the

8     associate was being prepared to take over the firm.

9             Now, by the way, Your Honor, I found out three

10    weeks into that January time period, from a client, that

11    the attorney who had this extraordinary event had in fact

12    opened his own practice in Bridgeport.  And since he was

13    still around, I attempted to contact him in order to get

14    an update and to gain a deep level of understanding of the

15    cases, of all his cases that he had.  Well, he refused to

16    talk to me.  He wouldn't talk.

17            Now, there were some clients in fact, Your

18    Honor, who said I want -- said to me they might be

19    interested in talking to him.  I gave them his address and

20    phone number, said if you think you want to stay with him,

21    go with him, here he is.  He didn't take any of them.  He

22    wouldn't talk to them.

23            Further, in an attempt to deal with an

24    extraordinarily large case load at this point, it was

25    myself and a brand new individual, who was not a

1   paralegal, but was very bright and wanted to become a

2   paralegal.  She stayed.  Thank God she stayed.  I'm sorry,

3   I didn't mean to say that in vain.

4           And because I cared about the practice and my

5   responsibility to the Court, to the clients and to myself

6   as a practitioner, I stopped taking any cases, any cases

7   for six months.  I went from January through the end of

8   July not taking a case, instead trying to work this

9   through.  So this included my attending depositions, my

10  attending CHRO hearings, my attending serious -- a major

11  arbitration -- which thankfully we won -- attending many

12  other hearings and trying to produce product that would

13  satisfy.

14          THE COURT:  Let me just focus us on what I think

15  I need to resolve.

16          I have a motion to compel.  It has not been

17  resolved through discussion between counsel, so I have to

18  decide the motion to compel.

19          What I see as being at the root of the motion to

20  compel isn't the number of cases that you had or the

21  amount of time that you took responding necessarily, but

22  rather, as I read the motion to compel and the objection

23  and the reply, and I look at the two sets of responses --

24  and I think we're talking about the August 16th

25  response -- the August response we'll call it -- and the

1    October response.  I understand what motivates the motion

2    to compel is that there were objections -- well, there

3    were concerns about the objections that were raised in the

4    August objections and responses.  And in addition to there

5    being concerns about the points that were raised in the

6    October responses and objections, there was concern

7    because, as I understand it, they were delivered the

8    morning or at the time the plaintiff was being deposed?

9              MR. AXELROD:  That is correct, Your Honor.

10             THE COURT:  That is correct?

11             MR. AXELROD:  Yes.  I brought them.

12             THE COURT:  So that's what I see as really the

13    issue.

14             And then we get to what I'll call the November

15    responses.  At that point the motion to compel has already

16    been fully briefed.  It's been scheduled for argument, or

17    hearing, rather.  And that really goes to whether the

18    plaintiff has done anything to mitigate any harm that's

19    already occurred.

20             So that's the framework that I see.

21             I guess the question I want to address is

22    what -- well, I guess, Mr. Shea, your papers -- I've read

23    the papers.  I think I understand what you're saying, but

24    I should probably, since you are the movant, give you a

25    chance just to highlight what you think are the essential

1    points as to why you think I should grant the motion to

2    compel.

3                MR. SHEA:  Thank you, Your Honor.

4                THE COURT:  And then I'll hear from Mr. Axelrod.

5                MR. SHEA:  Thank you, Your Honor.

6         I just want to reply briefly that I can't let it

7    go without being somewhat flabbergasted the snide comment

8    about being busy and not having a chance to look at this,

9    given the premise of every reason why we are here --

10               THE COURT:  I followed that.

11               MR. SHEA:  -- when he sent these yesterday

12   afternoon.  I'm really trying to get to the heart of what

13   I need.

14        What would really help -- and I don't know if I

15   heard this correctly -- I believe I heard Attorney Axelrod

16   say there are three individuals.  But I don't know if he

17   is saying and confirming on the record that there are

18   three individual jobs at issue as the adverse employment

19   actions in this case, because that would significantly

20   help narrow my focus for my ability to actually complete

21   the discovery I need to complete the plaintiff's

22   deposition.

23        So if we can get that on the record, that the

24   three individual jobs identified in the complaint are the

25   only three adverse employment actions alleged in the

1    complaint and being pursued in this case, that would be a

2    significant piece.

3              THE COURT:  Let's pause for a second and let me

4    say that is my understanding.  Is that a correct

5    understanding, Mr. Axelrod?

6              MR. AXELROD:  Yes, Your Honor.  Yes, we are back

7    to the original complaint, which is three --

8              THE COURT:  Yes does it.

9              MR. AXELROD:  Thank you, Your Honor.

10             MR. SHEA:  Very good for that.

11             Other than that are those items in 7 through 11

12   that I said about the identification of the other people.

13   So that's what we still need.

14             In terms of the -- we need that information.  We

15   need to complete the plaintiff's deposition.  We would

16   need an extension of the dispositive motion deadline I

17   would say two months following that to be able to prepare

18   what we expect would be a dispositive motion.

19             We would want to complete the plaintiff's

20   deposition within a month after we get the compliant

21   responses, and we would want two months after that to file

22   our motion for summary judgment.  And we would seek

23   reasonable attorney's fees for the motion practice and the

24   waste of time in this deposition that was occasioned by

25   the delay, which we don't believe is excusable.

1           THE COURT:  Okay.  Whenever you're ready,

2     Mr. Axelrod.

3           MR. AXELROD:  Yes.  Thank you, Your Honor.

4           There are only three, as we said.  Frankly, I

5     thought that was self-evident from the removal of any

6     other complaint.

7           With regard to 7 through 11, if -- and this goes

8     back a ways to the points I pointed out where there was no

9     conversations.  No conversations and no certifications.

10    If we had had those discussions, or have those

11    discussions, I would endeavor to respond to them.  It may

12    be -- although because I'm not clear exactly as to what

13    the 7 through 11 is --

14          THE COURT:  Why don't we pause and look at 7

15    just so we're all certain what we're talking about.

16          MR. AXELROD:  Are we looking at the

17    November 13th?

18          THE COURT:  I'm pulling out both of them.  I'm

19    not looking at November 13th, no, because I don't have

20    that one.  I have the October -- the one from the

21    deposition.  And I don't need the other one because that I

22    don't think is particularly relevant to my making a

23    decision.

24          MR. AXELROD:  Well, we filed that in an attempt

25    to, because we hadn't heard from him to assist the

1   resetting of the case and prevent any prejudice to the

2   defendant.  The trial is not imminently on us so my

3   thinking was, rightly or wrongly, address every possible

4   issue that's out there because I didn't really have at

5   that point any kind of updated list of what was not proper

6   from October 16th.

7           THE COURT:  Let's look at Number 7 then.  Are

8   you saying that you fully responded to Number 7, or are

9   you conceding that you did not respond to Number 7?

10          MR. AXELROD:  We've -- we have nothing to give.

11  In other words, we've produced everything we have.

12          THE COURT:  I'm sorry?

13          MR. AXELROD:  We produced everything we have,

14  Your Honor.  My client has no other documents that he

15  could --

16          THE COURT:  I'm sorry.  I'm on the

17  interrogatory, not the request for production.  I thought

18  that's what you were talking about.

19          MR. AXELROD:  Interrogatory 7.  You're right.  I

20  apologize.

21          THE COURT:  It says, State the qualifications

22  required -- state the nature of your qualifications,

23  explain how your qualifications were superior to that of

24  the candidate who was chosen, and identify the Caucasian

25  staff member who was less qualified than you and who was

1    selected without an interview, and then the identity of

2    any other applicants known to you and your knowledge as to

3    whether those applicants were interviewed.

4           MR. AXELROD:  My client, Your Honor, has no

5    information in that regard.  That's part of our

6    interrogatories, to find out who else applied and who were

7    the decision makers and what their criteria was, and how

8    their criteria was superior.

9           THE COURT:  So in responding to this you should

10    have said "none," for instance, for some of them; is that

11    what you're saying?

12           MR. AXELROD:  Well, we provided everything we

13    had, but I would be willing to say, no, we don't.

14           (Pause.)

15           MR. AXELROD:  May I introduce the Court to my

16    recent associate?

17           UNIDENTIFIED SPEAKER:  Hello, Your Honor.  I'm

18    not yet --

19           THE COURT:  Why don't we let you sit there as

20    sort of a paralegal helping Mr. Axelrod.

21           (Off the record.)

22           MR. AXELROD:  Your Honor, the question posed to

23    me is if you had in your possession -- which I have copies

24    of -- the November 13th, and you looked at that, it would

25    tell you, really, the answer to your questions.

1          THE COURT:  But in this October submission it

2    does not.  Is that fair?

3          MR. AXELROD:  That's correct.

4          THE COURT:  And is the same thing true with

5    respect to everything else that's 7 through 11.

6    A.    Yes.

7          THE COURT:  Okay.  All right.

8          I mean, I read through the letter from Mr. Shea

9    from September 5th.  I read through the responses.

10          Do we have a similar situation with respect to a

11    number of these other ones that are identified where

12    Mr. Axelrod is now saying if you look at the November 13th

13    response, we responded, but when we look at the

14    October 16th response, there has not been an adequate

15    response.

16          MR. AXELROD:  Correct.

17          THE COURT:  Is that where we are?

18          MR. AXELROD:  I am saying that and I'm saying we

19    attempted to correct or address any issues --

20          THE COURT:  Okay.

21          MR. AXELROD:  -- that were existent without

22    having an actual letter or conversation about the ones

23    that were existent.  All we did is hit everything, Your

24    Honor, and go over everything and scrub it so that there

25    would be no further question for opposing counsel.

1          THE COURT:  All right.

2          Yes, Mr. Shea.

3          MR. SHEA:  Your Honor, the only thing I would

4     say is that it appears that with the information they gave

5     us yesterday -- which is why I did try and review it to

6     see.  I know Your Honor doesn't have it.  You are correct.

7     We had none of that in October.  But the 7 through 11 is

8     still lacking.  And if you say he doesn't know the answers

9     to D and E and the ones that say the identity of the

10    individual.

11         I mean, the allegation of the complaint, Your

12    Honor, is that someone else was hired who was less

13    qualified.  We said who is that person?  That's what it

14    says.  Who else do you know?  They didn't say I don't

15    know.  They just didn't answer.

16         So if the answer is none to the plaintiff's

17    knowledge, I think that needs to be in our responses so

18    we're --

19         THE COURT:  You're correct.

20         MR. SHEA:  Thank you.

21         THE COURT:  Because there's a big difference

22    between not responding and saying we don't know of

23    anybody.  If the response is we don't know anybody, they

24    can't come back later and say, oh, here's the person,

25    whereas, if they are silent they could do that.  The point

1      is to pin the plaintiff down.

2              MR. SHEA:  Yes, Your Honor.

3              MR. AXELROD:  Your Honor, we agree.

4              THE COURT:  Let me tell you what my analysis is.

5              MR. AXELROD:  Sure.

6              THE COURT:  My analysis is that we had a set of

7      deficient responses in August; that we have a document

8      that refers to correspondence that spells out responses;

9      we have in that letter a very detailed analysis of

10     deficiencies in responses.  That preceded the filing of

11     the motion to compel.  I think that is better than what I

12     usually see in terms of an affidavit that says we talked

13     about it, because it really spells out everything in

14     detail, and I was able to go back and compare that to what

15     was in the objections and responses.  I thought the

16     concerns raised by the defense were all valid.

17             We then have a supplemental production of

18     interrogatory responses and documents at the plaintiff's

19     deposition.  I think anybody would -- any reasonably

20     objective person would say that's unfair, that's

21     inappropriate.  You can't walk into a deposition and give

22     somebody things at that time and not have them be

23     prejudiced in their ability to conduct the deposition

24     appropriately.

25             Therefore, I conclude that the motion to compel

1    should be granted.

2          I think to the extent there have been additional

3    responses made on we'll call them the November 13th

4    responses and production, that's good.  But that's after

5    the fact.  What I will do is order that within the next

6    two weeks -- well, within the next week, before you leave

7    today -- do you have time to go through all those things

8    before you leave now, Mr. Shea?

9          MR. SHEA:  Go through the 7 through 11?

10          THE COURT:  Yes.

11          MR. SHEA:  Yes.

12          THE COURT:  You go through those and you

13    identify what you think are deficiencies.  And then we

14    have production within two weeks.  And we'll have a phone

15    call and talk about it, okay?

16          MR. SHEA:  Yes.

17          MR. AXELROD:  Yes, Your Honor.

18          THE COURT:  And then, Mr. Shea, you can submit

19    your affidavit and application for fees and I will take a

20    response from Mr. Axelrod and then I'll decide what's

21    appropriate under all of the circumstances, and I will

22    take into the account the fact that Mr. Axelrod belatedly

23    produced things on November 13th.

24          That said, if you all are able to work out what

25    you think is a fair amount, you can just notify me that I

1    don't have to resolve that issue, okay?

2                 MR. SHEA:  Yes, Your Honor.

3                 MR. AXELROD:  Yes, Your Honor.

4                 THE COURT:  The docket will reflect that the

5    motion to compel has been granted and for sanctions has

6    been granted.

7                 We also have this one other issue that I hadn't

8    focused on, but it's here, the motion for extension of

9    time to complete discovery.  I think, given the way things

10   have gone, that's denied.

11                MR. SHEA:  Thank you, Your Honor.

12                MR. AXELROD:  Thank you.

13                THE COURT:  Any questions?

14                MR. SHEA:  The only question remaining for the

15   defendant, Your Honor, would be once we get the responses

16   for the two weeks -- and I'm happy to do this by motion,

17   written, if you need me to, but right now I think we have

18   an early December dispositive motion deadline.  We want to

19   be able to complete the plaintiff's deposition and then

20   have two months after that to do that, if we could.

21                THE COURT:  Can we agree on a date for a

22   deposition before you leave today?

23                MR. SHEA:  I don't know if they can without

24   their client.

25                THE COURT:  Why don't you all contact me by

1    Tuesday and let me know when the deposition will be held.

2    Then I'll also -- I guess what we'll do, Mr. Shea, is

3    we'll show -- so I don't lose track of it -- that you've

4    made an oral motion to extend the deadline for dispositive

5    motions.  That will be pending.  We'll pick that up once I

6    hear the date for the deposition of the plaintiff.  If you

7    all just file a notice.  It would probably be good to file

8    something on the docket saying the plaintiff's deposition

9    is going to be taken on this date, so we would like

10   dispositive motion deadline to be this date.

11            MR. SHEA:  Thank you, Your Honor.

12            MR. AXELROD:  Your Honor, if I may.

13            We had commenced taking a deposition of my

14   client's, Mr. Azam's direct superior with reference to

15   what she knew about his qualifications as opposed to the

16   qualifications of people who were chosen.  Regrettably,

17   the only date available -- and we were near the -- I think

18   we were within two and a half weeks of the end of

19   discovery -- because of Mr. Shea's busy schedule, he had

20   only one half-day available on a Friday.

21            We would just ask the Court if we would be able

22   to complete that deposition, which has already been

23   started.

24            MR. SHEA:  Your Honor, I'd like to be heard on

25   that.

1          I actually offered the full Friday.  Attorney

2    Axelrod, his office gave one excuse for not being able to

3    start it that morning and he gave a different one.

4          MR. AXELROD:  No.

5          MR. SHEA:  And he ended it before his stated

6    ending time because he hired a court reporter who couldn't

7    stay until the stated ending time.

8          Most important, the woman who he deposed,

9    Dorothy Ovelar, has nothing to do with the operative

10   complaint.  The only potential relevance she had was in an

11   attempt to add an additional adverse employment action in

12   the supplemental complaint, which, in addition to the five

13   positions, added an allegation about a three-day

14   suspension he had received from Ms. Ovelar.  That was in

15   the amended complaint.  But since that has now been

16   withdrawn and the only adverse employment actions are the

17   three positions for which Mr. Azam applied but did not

18   get, Ms. Ovelar has already testified that she had nothing

19   at all to do with any of those interviews, who selected

20   the people for that.  She's already been deposed by

21   Attorney Axelrod for four-plus hours.  I don't see any

22   good faith basis for bringing her back to link her to a

23   complaint that's now been withdrawn.

24          MR. AXELROD:  Your Honor --

25          THE COURT:  Mr. Axelrod, which of those three

1   positions does she have information about?

2           MR. AXELROD:  She was his superior, his direct

3   superior in 2016, the date of all three of them.  We don't

4   know yet whether -- because we haven't had the

5   opportunity -- to find out whether -- what exactly she

6   knows and what she -- whether she was consulted and what

7   she said to him after he was not selected, because he did

8   ask her.

9           We did not make -- this is becoming tedious.  We

10  did not make a number of excuses.  What we said was that

11  we had a client who, because he's a Muslim, couldn't be

12  there for part of the afternoon, which was the only time

13  that was made available to us.

14          THE COURT:  What time did you start the

15  deposition?

16          MR. AXELROD:  Sorry?

17          THE COURT:  What time did you start the

18  deposition?

19          MR. AXELROD:  At the time that was made

20  available to us.  I think it was 1:00.

21          MR. SHEA:  I e-mailed him two days before the

22  deposition and offered to start as early as they could

23  that day.  His office assistant said there was a client

24  meeting that day, and then he said he had a contested

25  hearing that morning and would be unable to start any

1    earlier.

2              MR. AXELROD:  Memory strikes.  Yes, Your Honor.

3    I did have a contested hearing that morning, which had

4    been scheduled for quite a while.

5              THE COURT:  So what did you not get to cover

6    with -- what's her name?  I'm trying to get her name.

7              MR. SHEA:  Ovelar, O-V-E-L-A-R.

8              MR. AXELROD:  It appears that she's gone through

9    a similar period -- process.  She knows how the Star

10   system works.  She knows how what's called FAC works.  She

11   has -- we're not sure, but we believe she has knowledge --

12   because we haven't had the opportunity to ask her -- as to

13   how that system works, who makes the decisions, as to what

14   his problems were, if in fact there were any problems,

15   because he is, by his background and training, with a

16   Master's, a Master's degree and 18 years of experience in

17   the Registrar's Office, he would appear to be extremely

18   fit for the position.

19             All we got back was -- or he got back was

20   something that said, or words to the effect saying, we've

21   had other people and we found them more suitable than you.

22             He has spoken to her and asked her, What is the

23   problem here?

24             THE COURT:  Well, was she a decision maker?  Was

25   she a decision maker?

1     MR. AXELROD:  I don't know yet.  Honestly, I

2     don't know yet.  I don't.

3          I'm not trying to run bills up here.  I just

4     don't know, and I'd like to find out.

5          She may not know.

6          THE COURT:  Well, let me ask this:  Was she

7     someone -- we have three positions listed in the

8     complaint.  Was she a person who supervises any of the

9     people who fill those positions?

10          MR. SHEA:  I don't believe she had anything to

11     do.

12          MR. AXELROD:  We don't know that yet.

13          MR. SHEA:  I'm happy to submit an affidavit.

14          MR. AXELROD:  We know she supervised him.

15          THE COURT:  Well, that's different, though,

16     because he was applying for other positions.  So I don't

17     know how she would have -- well, why don't you get an

18     affidavit as to what relationship she bears to any of

19     these, and then also send me, to chambers, a copy -- has

20     the transcript been ordered yet?

21          MR. AXELROD:  I have it.

22          THE COURT:  Send a copy of the transcript to my

23     law clerk and I'll decide whether we can reopen the

24     deposition.

25          MR. AXELROD:  Thank you, Your Honor.  That's an

1    excellent resolution.

2                THE COURT:  Anything else?

3                MR. AXELROD:  No, thank you, Your Honor.

4                THE COURT:  Thank you.  Have a good weekend.

5                MR. SHEA:  Thank you.  You too, Your Honor.

6                    (Whereupon, a recess followed.)

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                        C E R T I F I C A T E

2

3                  QAZI AZAM V. YALE UNIVERSITY

4                       3:18CV1260(AWT)

5

6

7           I, Corinna F. Thompson, RPR, Official Court

8    Reporter for the United States District Court for the

9    District of Connecticut, do hereby certify that the

10   foregoing pages, pages 1 – 30, are a true and accurate

11   transcription of my shorthand notes taken in the

12   aforementioned matter on November 15, 2019, to the best of

13   my skill and ability.

14

15

16

17

                     /s/_____

18

                       CORINNA F. THOMPSON, RPR
19                      Official Court Reporter
                       450 Main Street, Room #225
20                     Hartford, Connecticut 06103
                          (860) 712-8345
21

22

23

24

25