## UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

_____

|  |  |  |
|---|---|---|
| QAZI T. AZAM | : | CIVIL ACTION NO. |
|  | : | 3:18-CV-01260-AWT |
| Plaintiff, | : |  |
| v. | : |  |
|  | : |  |
| YALE UNIVERSITY | : |  |
|  | : | MARCH 9, 2020 |
| Defendant. | : |  |

_____ :

## TABLE OF CONTENTS
## PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

I.    **INTRODUCTION**

II.   **FACTS**

III.  **STATEMENT OF THE CASE**

IV.   **LEGAL STANDARD**

V.    **ARGUMENT**

    A.   **Under the Indirect Method of Proof, Plaintiff Has Established All the Elements of His Title VII and Conn. Gen. Stat. §46A-60a-60(b)(1) Prima Facie Case of Race Discrimination**

      1.   **Plaintiff Was Qualified for the Positions / Defendant's Proffered Reasons for Its Actions Are Pretextual**

        a. **Mr. Azam was a highly valued member of the economics department**

          i. **The plaintiff had the requisite skills in Banner or other integrated student information systems - defendant's assertion to the contrary is pretextual.**

          ii. **The plaintiff had a proven ability to "work well" with all levels of staff, sufficient for positions 1 and 2 - defendant's assertion to the contrary is manifestly erroneous and pretextual.**

**iii. The plaintiff had sufficient experience related to the central office criterion, for position 2 - defendant's assertion to the contrary is manifestly erroneous and pretextual.**

**iv. The plaintiff had sufficient experience with Yale College academic and undergraduate regulations, a criterion for Req. No. 40580BR (position 3) - defendant's assertion to the contrary is manifestly erroneous and pretextual.**

**v. Plaintiff's three master's degrees plus his experiential background reflect unmatched qualifications for all of the positions.**

2. **Plaintiff has provided sufficient evidence for an inference of discrimination / Defendant's Proffered Reasons for Its Actions Are Pretextual**

   a. **The Circumstances Behind the Defendant's Failure to Promote Mr. Azam Militate Toward a Finding in Favor of an Inference of Discrimination**

   b. **A Determination of Fact Regarding Credibility of Competing Testimony is Not Appropriate at this Time**

   c. **Circumstances Giving Rise to the Inference of Discrimination; During 2016, Plaintiff was Subjected to Several Discriminatory Statements and Actions that Directly Relate to the Failure to Promote Plaintiff.**
   **i. The plaintiff had the requisite skills in Banner or other integrated student information systems - defendant's assertion to the contrary is erroneous and used for pretextual reasons.**

   **ii. Pretextual justification – plaintiff works well with all levels, contrary to defendant's allegation supporting its reason for denial of position 1**

   **iii. Pretextual justification - plaintiff was not a risk to violate confidentiality, as alleged in reason for denial of position 3**

   **iv. Pretextual justification - plaintiff's errors on his resume were a pretextual justification for denying him an interview for position 3**

3. **Plaintiff has provided direct evidence and thus need only satisfy the mixed-motive <u>Price Waterhouse</u> standard**

B. <u>**Plaintiff Has Established All the Elements of His ADEA Prima Facie Case of Age Discrimination Under the Indirect Method of Proof**</u>

   1. **Defendant reveals discriminatory animus – age discrimination**

      a. **But-for cause: A scheme to discourage the plaintiff: "Too old to apply"**

      b. **Material factual dispute**

**2. Indirect Method: Plaintiff reveals discriminatory animus – age discrimination**

    **a. The Plaintiff established a prima facie case using the McDonnell Douglas indirect method of proof**

    **b. Material fact dispute**

## VI. <u>CONCLUSION</u>

**UNITED STATES DISTRICT
COURT DISTRICT OF
CONNECTICUT**

_____
                                      :

QAZI T. AZAM                    :       CIVIL ACTION NO.
                                     :       3:18-CV-01260-AWT

                Plaintiff,      :

     v.                      :

YALE UNIVERSITY         :

                                     :       MARCH 9, 2020

                Defendant.   :
_____   :

**PLAINTIFF'S MEMORANDUM OF LAW IN
<u>OPPOSITION TO MOTION FOR SUMMARY
JUDGMENT</u>**

The Plaintiff, Qazi Azam, hereby submits this Memorandum of Law in opposition to

the Defendant's Motion for Summary Judgment [Doc. No. 56] filed February 10, 2020.

## I.   <u>INTRODUCTION</u>

Plaintiff, Qazi Azam, (DOB: February 15, 1946), is a Pakastani, Southeast Asian,

Muslim male of darker complexion SPSOF ¶ 1. with three master's degrees.[1] SPSOF ¶ 2.

Plaintiff sought three positions for which he was the most qualified candidate but was

denied the positions, in favor of substantially younger workers not in Plaintiff's protected

class. SPSOF ¶ 51. Plaintiff started his employment, as a Catalog Assistant IV (temporary)

and Research Assistant (temporary), with Defendants on February 3, 2001. SPSOF ¶ 3. He

currently holds the position of Undergraduate Registrar, Economics Department, which

---

[1] References to Defendant's Statement of Undisputed Material Facts shall be referred to as (DSOF ¶_), and
references to Plaintiff's Supplemental Statement of Material Facts shall be referred to as (SPSOF ¶_).

he had held for the past twelve years. SPSOF ¶ 3. He has been supervised from 2016 to present by Administrative Director and Operations Manager, Economics Department, Dorothy Ovelar, a Caucasian female. SPSOF ¶ 3. Ms. Ovelar, plaintiff's supervisor, along with Shonna Marshall, Associate University Registrar, also a Caucasian female, Daria Vander Veer, Assistant University Registrar, and Joel Silverman, a Caucasian male showed favoritism in hiring and in other actions towards individuals who were not in Plaintiff's protected class. SPSOF, generally Plaintiff was also subjected to egregious racial slurs, including statements calling him a terrorist and considering him to be a terrorist threat, and statements considering him to be disqualified for advancement because of his age. SPSOF, generally.

Plaintiff was exposed to numerous incidents of racially motivated conduct, which included: plaintiff being called "a terrorist," management not disciplining the individual who said that; treated as a terrorist threat; and being told "don't tell me that you are that old" in an interview, then not receiving the position, after not receiving other positions for the same reasons. SPSOF ¶ 32, 38, 39, 43. Also, Plaintiff was accused of and disciplined improperly for threatening behavior in a scheme to make the Plaintiff seem in need of interpersonal improvement and therefore unworthy of a promotion. SPSOF ¶ 33.

During his employment at Yale University he was supervised by Mary Calderal, William Massa, Stephen Cohen, Ann Judd, Dajin Sun, and Patricia Brown, prior to being supervised by Dorothy Ovelar SPSOF ¶ 31, who failed to act to oppose discrimination SPSOF ¶ 39, looked the other way SPSOF, ¶ 39, and in fact was part of a scheme to prevent the plaintiff from receiving a promotion. SPSOF ¶ 39.

As there are numerous factual disputes in this case, this Court should deny

Defendants' Motion for Summary Judgment in its entirety.

**II.**  **FACTS**

Consistent with Local Rule 56(a)(2), Plaintiff has filed Responses to Defendants' SOF (herein DSOF ¶ [#]) a Supplemental Statement of Facts in Opposition to Summary Judgment (herein "SPSOF ¶ [#]"), which is incorporated herein by reference.

**III.**  **STATEMENT OF THE CASE**

Mr. Azam was subject to disparate treatment as compared to others in his position. He was called a terrorist and regarded as too "old" for promotion. The denials of interviews for positions he was qualified for were made for discriminatory reasons. All the other documentation generated to ostensibly show a nondiscriminatory purpose to the defendant's failure to promote are a manufactured pretext and ought to be disregarded. Mr. Azam establishes the prima facie case and no applicable defenses apply. Having established a prima facie case, plaintiff then will demonstrate that the defense's proffered reasons are pretextual.

**IV.**  **LEGAL STANDARD**

Summary judgment is appropriate "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *see also* Roe v. City of Waterbury, 542 F.3d 31, 35 (2d Cir. 2008). "In making that determination, a court must view the evidence in the light most favorable to the opposing party. A fact is material when it might affect the outcome of the suit under governing law, and an issue of fact is genuine if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party. The moving party bears the burden of showing that no genuine factual dispute exists, and in assessing the record to determine whether there is a genuine issue as to any material fact, the court is required to resolve all ambiguities and draw all factual inferences" in favor of the non-moving party." (Internal citations and quotation marks omitted.) Blue v. City of New Haven, Docket No. 3:16-cv-1411 (MPS), 2019 U.S. Dist. LEXIS 15104, at *9 (D. Conn. Jan. 31, 2019).

Mr. Azam's Title VII and Conn. Gen. Stat. §46A-60a-60(b)(1) claims (for race, religion, and national origin discrimination) are analyzed under the burden-shifting framework set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). Holcomb v. Iona College, 521 F.3d 130, 138 (2d Cir. 2008); Back v. Hastings on Hudson Union Free Sch. Dist., 365 F.3d 107, 123 (2d Cir. 2004); Ruiz v. County of Rockland, 609 F.3d 486, 491-92 (2d Cir. 2010).

Similarly, Mr. Azam's ADEA claim is analyzed under *McDonnell Douglas*. *See Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93, 106-07 (2d Cir. 2010) (ADEA). Under the *McDonnell Douglas* framework, a plaintiff must first establish a prima facie case of discrimination. Holcomb, 521 F.3d at 138. In the context of an alleged discriminatory discharge, a plaintiff must show that (1) she is a member of a protected class; (2) she was qualified for the position she held; (3) she suffered an adverse employment action; and (4) the adverse action took place under circumstances giving rise to the inference of discrimination. Id. See Mauro v. S.New England Telecomms*., Inc.*, 208 F.3d 384, 386 (2d Cir. 2000) (ADEA).

Once a defendant articulates a legitimate, non-retaliatory reason for the adverse employment action, the plaintiff has "an opportunity to show that the reason was merely a pretext...." LaFond v. Gen. Physics Services Corp., 50 F.3d 165, 173 (2d Cir. 1995). At this

stage, "the evidence that a plaintiff presented in support of her prima facie case *may* be sufficient to satisfy her ultimate burden of proof," although "that will not necessarily be the case." Perez-Dickson   v.  City of Bridgeport, 304 Conn. 483, 517, 43 A.3d 69 (Conn. 2012); *see also* Craine v.   Trinity   College, 259 Conn. 625, 644, 791 A.2d 518 (Conn. 2002) (explaining that "[a]lthough the presumption created by the prima facie case disappears, the plaintiff may rely upon the evidence used in establishing the prima facie case to prove the ultimate issue" in a discrimination case analyzed under the *McDonnell-Douglas* burden-shifting framework); LaFond, 50 F.3d at 174 ("Pretext may be demonstrated either by the presentation  of additional evidence showing that the employer's proffered explanation is unworthy of credence, or by reliance on the evidence comprising the prima facie case, without more.") (internal quotation marks and citation omitted). Blue, 2019 U.S. Dist. LEXIS 15104, at *16-17.

The following court instruction, with regard to retaliatory discharge, is also applicable to failure to promote. "Since the trial court is not to resolve issues of fact in deciding a motion for summary judgment, the determination of whether the circumstances give rise to an inference of retaliatory discharge must be a determination of whether the proffered admissible evidence shows circumstances that would be sufficient to permit a rational finder of fact to infer a retaliatory motive. It is ***not*** the province of the summary judgment court itself to decide what inferences should be drawn." (Emphasis in original; Internal citations and related quotation marks omitted.) LaFond, 50 F.3d at 173. Similarly, with discrimination, and denial of promotion, "The ultimate question in an employment discrimination case is whether the evidence offered can reasonably and logically give rise to an inference of discrimination under all of the circumstances. Charron v. City of Hartford, 356 F. Supp. 2d 166 (D. Conn. 2005) (citing Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105

8

(2000); <u>Bickerstaff v. Vassar College</u>, 196 F.3d 435, 448 (2d Cir.1999)).

V.     **ARGUMENT**

### A. Using the Indirect Method of Proof, Plaintiff Has Established All the Elements of His Title VII and Conn. Gen. Stat. §46A-60a-60(b)(1) Prima Facie Case of Race Discrimination

To establish a prima facie case of employment discrimination based on a failure to promote claim under Title VII, a plaintiff must show that (1) he is a member of a protected class, (2) he applied and was qualified for a position for which the employer was seeking applicants, (3) he was not selected for the position, and (4) the failure to promote occurred under circumstances giving rise to an inference of discriminatory intent. *See* <u>Hunt v. Con Edison Co.</u>, 16-CV-0677 (MKB) (E.D.N.Y. Dec. 29, 2017). *See also* <u>Texas Dep't of Community Affairs v. Burdine</u>, 450 U.S. 248, 253 n. 6 (1981). The Supreme Court clarified that the McDonnell Douglas opinion described an "appropriate model for a prima facie case of racial discrimination" but that the "standard is not inflexible." The Court noted, however, that in establishing a prima facie case the plaintiff must show that "she applied for an available position for which she was qualified, but was rejected under circumstances which give rise to an inference of unlawful discrimination." <u>Id</u>. at 253.

The defendant acknowledges that the plaintiff is part of a protected class and applied for and was denied the three positions at issue in this case. (Docket No. 56, ¶ 8) The defendant contends, however, that plaintiff has not established that he was qualified for the positions. The defendant further contends that the plaintiff has not established that the positions remained open after he was not hired and the University continued to seek applicants with his qualifications. (Docket No. 56, 8). Defendant is in error, as set forth below.

### 1. Plaintiff Was Qualified for the Positions / Defendant's Proffered Reasons for Its Actions Are Pretextual

#### a. Mr. Azam was a highly valued member of the economics department

The record shows, as set forth in sections i, ii, iii *infra*, that Mr. Azam was a highly valued member of the economics department; that he worked well with various levels in the department; and that he was highly skilled and competent in performing the skills required for the positions he sought. The defendant correctly notes that "In order to establish this qualification, the plaintiff 'must prove his 'basic eligibility for the position at issue.' Slattery v. Swiss Reinsurance Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001), as amended (June 6, 2001), quoting Owens v. New York Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991)." As defendant further points out, "[T]he plaintiff must prove that he 'possesses the basic skills necessary for performance of the job.'" (Docket No. 56, 9) Plaintiff has done this, as is set forth as follows.

#### i. The plaintiff had the requisite skills in Banner or other integrated student information systems - defendant's assertion to the contrary is erroneous and used for pretextual reasons.

Having decided not to interview the plaintiff, the defendant also failed to take any reasonable steps to determine the suitable background that Mr. Azam possessed. Plaintiff demonstrated that he was highly proficient in software such as Excel and additional software packages, including Banner. Plaintiff's resume cites Banner among other related qualifications: "Adept in Classes V2, CIM, TFS, SAS, Adobe Photoshop, Banner, BrioQuery & Crystal Reports and well-versed in Data Security and FERPA regulations." SPSOF ¶ 8.

Referring to defendant's rejections of plaintiff for Req. No. 37619BR, July 14, 2016, and Req. No. 38875BR, November 28, 2016, (hereinafter referred to also as "position 1" and

"position 2"), Defendant asserts, "Ms. Marshall reviewed the plaintiff's application for both positions, and concluded that he had not demonstrated evidence of having proficiency in Banner or other integrated student information systems." (Docket No. 56, 2) Both plaintiff and defendant concur that Ms. Shonna Marshall made this determination without an interview (Docket No. 56, 2) and without getting input into the decision from the plaintiff's supervisor, Ms. Ovelar. SPSOF ¶ 28. Defendant notes, of the openings for both positions for which Ms. Marshall declined to offer the plaintiff an interview: "[B]oth positions preferred familiarity with Banner and other student information systems." (Docket No. 56, 2) Yet, despite this requirement, Ms. Marshall did not obtain input into the decision from Ms. Ovelar, plaintiff's supervisor to establish whether he had this experience. Ms. Ovelar testifies that she had no input into the decision for position 1, Req. No. 37619BR, and that she was not even contacted regarding input, that she could recall. SPSOF ¶ 9. (Plaintiff sought to continue the deposition of Ms. Ovelar, regarding her input into other positions, but the Court was hostile to Plaintiff's request.) To be clear, Plaintiff had worked for Yale, at that point, for more than 15 years, and no input was sought from plaintiff's current supervisor, who had been plaintiff's supervisor for the most current period, yet plaintiff was determined to not have enough experience in "Banner or other integrated student information systems," experience he absolutely possessed. SPSOF ¶ 10. Plaintiff had extensive experience in the following integrated student information systems: Classes V2, CIM, TFS, Banner, BrioQuery & Crystal Reports. SPSOF ¶ 10. Ms. Ovelar was aware of plaintiff's experience with the student information systems required of the position and Mr. Azam's ability to use them. And yet, Ms. Marshall took no steps to ascertain his experience level and background in the required areas, including failing to contact plaintiff's current supervisor, Ms. Ovelar. Pretext is clear.

**ii. The plaintiff had a proven ability to "work well" with all levels of**

**staff, sufficient for positions 1 and 2 - defendant's assertion to the contrary is manifestly erroneous and pretextual.**

Ms. Marshall, for position 1, Req. No. 37619BR, and for position 2, Req. No. 38875BR, cites, as a reason for not granting Mr. Azam an interview, that he "had not demonstrated ... a proven ability to work well with all levels of faculty and staff." SPSOF ¶ 12. This is clearly erroneous, as follows, and could easily have been ascertained through a candidate interview.

Plaintiff had worked well, throughout his career, with various levels of personnel, including but not limited to Nobel laureates. Mr. Azam performed work for Nobel laureates and even received from them both positive reviews and letters of recommendation. Nobel laureate Robert E. Evenson writes, "I can envision him in a number of work settings where he would be a solid and productive employee." SPSOF ¶ 13. Mr. Azam also worked for William Nordhaus on work for which Mr. Nordhaus later received a Nobel Prize SPSOF ¶ 14. Mr. Azam considers Mr. Nordhaus a reference. SPSOF ¶ 15. The recommendations, beyond by Nobel laureates, that he received, span the course of his employment, from the very recent to those that date back many years. Yale's Aleh Tsyvinski, Arthur M. Okun Professor of Economics, in a letter dated September 8, 2019, stated of Mr. Azam, he is "liked by all who work with him. I give him my highest recommendation." SPSOF ¶ 16. Yale's Business Manager and Research Associate, M. Ann Judd, for Professor Robert E. Evenson stated of Mr. Azam, November 26, 2001, that he "worked well with everyone included in this project including myself." SPSOF ¶ 17. Yale University's Archivist, Mary Caldera, stated in a letter, March 3, 2002, of Mr. Azam, he is "conscientious and personable. I was glad to work with him and would welcome the opportunity to do so again." SPSOF ¶ 18. Mr. William R. Massa Jr., Public Services Archivist stated of Mr. Azam's qualities, in a letter, March 5, 2002: "Because of his diligence, he was able to

finish the project before the anticipated date. While I was his supervisor for the project, another librarian trained him and checked his work for accuracy and completeness. Without question, his productivity and accuracy met our expectations." SPSOF ¶ 18. Mr. Stephen Cohen, Head of Record Services, March 4, 2002, in a letter, stated of Mr. Azam: he "has proven himself to be an outstanding assistant in just the short time he has worked for me. … His attention to detail is equally matched by his accuracy and expediency of his work. Mr. Azam (sic) attention to detail has never slowed his progress. In fact, he is consistently ahead of schedule." SPSOF ¶ 18. The defendant, however, asserts without citing credible examples, that the plaintiff did not get along with all levels of personnel. SPSOF ¶ 19. This was a criterion Mr. Azam possessed which was intrinsic and well known to be a requirement of University Registrars, and was required for both position 1 and position 2, but which the defendant, Ms. Marshall, used to deny Mr. Azam an interview. SPSOF ¶ 19, 20. It should be clarified, that the actual criterion for position 2 is: "Demonstrated ability to work effectively with and foster collaboration among a wide range of individuals and constituencies in a large, complex academic environment. Ability to negotiate successfully and under pressure." (Marshall Aff. 15, Exhibit F, 1, 4) Though characterized incorrectly, in Ms. Marshall's affidavit and rejection letter, as proven ability to work well with all levels of faculty and staff" (Marshall Aff. 15, Exhibit F, 1, 4), Mr. Azam possessed these qualities as well. SPSOF ¶ ¶ 13 - 18.

### iii. The plaintiff had sufficient experience related to the central office criterion, for position two - defendant's assertion to the contrary is manifestly erroneous and pretextual.

The only other articulated criterion by which Mr. Azam was denied an interview for position 2, was "experience in a central registrar's office." Mr. Azam testified that he worked

with the central office. SPSOF ¶ 21. The requisite experience in the central office was not experience he did not have in other related ways. Plaintiff's experience as an Undergraduate Registrar required him to perform numerous administrative roles. Those roles include management of numerous systems and interfaces, including webpage and database systems, CIM, a system for faculty, and informing faculty and staff about Identity Finder and FERPA regulations among numerous other administrative roles. SPSOF ¶ 22.

The defendant asserts, erroneously, regarding position 2, Req. No. 38875BR, that "The Assistant University Registrar position required four years of central registrar experience or equivalent administration experience." Docket 56, 11, SOF ¶ 22. The position in fact required the following:  "Required Education and Experience: "Bachelor's degree and four years of experience in a central registrar's office or in a comparable area of academic administration or an equivalent combination of education and experience." The requirement is not as defendant alleges, (Docket No. 56, 11) SOF ¶ 22, for the limited "central office experience or equivalent administration experience, but quite clearly for a combination of education and experience." SPSOF ¶ 47. Mr. Azam's three master's degrees and academic administration experience as an Undergraduate Registrar clearly meet and exceed the requirements.

The defendant also erroneously states that Mr. Azam was required to and did not have "any staff supervisory experience at the University." Contrary to defendant's assertion, Position 2, Req. No. 38875BR, did not require "staff supervisory experience at the University" as there is nowhere in the requisition such a requirement.  SPSOF ¶ 41. In point of fact, Plaintiff, in his submission for the Senior Administrative Assistant 2 position, Req. No. 37619BR, and for Req. No. 38875BR, has both a reference in his cover letter, noting that he has

supervisory experience, and a reference in his resume clearly stating he has supervisory experience, as follows: "Supervised Research and Administrative Staff… Trained & Guided Research Staff/Students in Data Collection, Analysis and Preparation of Reports) (1997-2000). Further, plaintiff's resume states additional supervisory experience: "Supervised and Trained Research and Administrative Staff; Conducted, Guided and Supervised Socio-Economic Researches in Data Collection, Analysis, and Preparation of Research Reports) (1992-1997). Def. Marshall Aff., Exhibit A, at 2. SPSOF ¶ 41.

> **iv. The plaintiff had sufficient experience with Yale College academic and undergraduate regulations, a criterion for Req. No. 40580BR (position 3) - defendant's assertion to the contrary is manifestly erroneous and pretextual.**

The defendant's rejection, of Mr. Azam's submission for Req. No. 40580BR, stated as its basis for denying Mr. Azam an interview: "we were looking for a candidate who had familiarity with College academic and undergraduate regulations." Mr. Azam possessed more than familiarity with College academic and undergraduate regulations. Assertions to the contrary were unfounded. Mr. Azam's worked at Yale for over fifteen years at the time of his application for this position. His cover letter lists as its first bulleted item: "Assist and apprise Director Undergraduate Studies (DUS), faculty, staff and students about academic policies & procedures, FERPA and other academic regulations. FERPA refers to The Family Educational Rights and Privacy Act (FERPA) (20 U.S.C. § 1232g; 34 CFR Part 99). It is a Federal law that protects the privacy of student education records. The law applies to all schools that receive funds under an applicable program of the U.S. Department of Education. Knowledge of this, along with other

regulations, is featured on Mr. Azam's cover letter. SPSOF ¶ 23.

Though, the following reason was not given for the denial of an interview opportunity, Dean Silverman states the following: "The plaintiff did not demonstrate evidence of having proficiency in attention to detail, confidentiality." SPSOF ¶ 24. Dean Joel Silverman and Alexa Martindale both state in their affidavits, incorrectly, that the position that they were interviewing for and hiring for was titled "Senior Administrative Assistant," as they also did in the rejection letter to Mr. Azam, dated December 7, 2016. SPSOF ¶ 25. The correct title is Senior Administrative Assistant 2. Despite, Dean Silverman stating this incorrectly in his rejection letter to Mr. Azam, and in his signed affidavit no less than twelve times and Ms. Martindale stating it incorrectly in her sworn statement no less than eight times, the two cite, as a reason for not interviewing Mr. Azam "inattention to detail," basing that on a limited number of typographical errors in Mr. Azam's resume. Ms. Ovelar, Mr. Azam's supervisor, herself, in a management level position, the same level that the plaintiff sought, had work product that included several errors. SPSOF ¶ 26. To base a determination on such flimsy evidence as limited errors in a document, as the defendant does, without other examples, while at the same time evidence exists that a person in the very same position sought by the defendant also makes similar errors, supports the assertion that the plaintiff was qualified. It remains, at least a matter of disputed fact, as to whether Mr. Azam was in fact qualified. As to the errors on the part of Dean Silverman and Alexa Martindale, one would expect that the submissions of these two individuals, at their level, for the purpose of summary judgment and for the purposes of the court, should be absolutely error free, and yet both the esteemed individuals made errors of misstating the position title. The moral is that the inescapable conclusion is that errors can creep into any document, even from those held in the highest regard. Using their own standards had they been candidates they would have been

unfit for the position.

### v. Plaintiff's three master's degrees plus his experiential background reflect unmatched qualifications for all of the positions.

The defendant concedes that plaintiff possesses 4 of the 5 characteristics, noted below, required for position 1, Req. No. 37619BR, (pointing only to two alleged failings, one noted above - "work well", *supra* section V.A.1.a.ii) and is in error regarding Mr. Azam's experience to fulfill the Banner requirement. SPSOF ¶ 27. The defendant's reliance upon the banner requirement is faulty and not believable, therefore an issue for the jury. Mr. Azam not only has the first four requirements of position 1, Req. No. 37619BR, uncontested, but also the remaining requirements, described in full as follows, SPSOF ¶ 28:

> Required Skill/ Ability 1:   Excellent customer service skills, highly developed organizational and interpersonal skills as well as strong written and verbal communication skills.

> Required Skill/ Ability 2:   Demonstrated ability to work with little supervision, exercise independent judgment, and demonstrate initiative. Proven ability to work independently and to collaborate as part of a team.

> Required Skill/Ability 3:   Demonstrated ability to effectively prioritize a variety of tasks, conflicting demands and deadlines. Must be flexible, work well under pressure and through distractions, in a fast paced environment.

> Required Skill/Ability 4:   Proficiency using advanced features of Microsoft Office (Word, Excel, PowerPoint, Outlook). Ability to learn new software programs.

> Required Skill/Ability 5:   Proven ability to work well with all levels of faculty and staff with professionalism and courtesy.

> Preferred Education, Experience and Skills:   Knowledge of Banner or other integrated student information systems.

In addition to Mr. Azam's experience with Banner, and, as the defendant concedes, his experience that satisfies requirements one through four, it is clear that Mr. Azam's qualifications

- which includes three master's degrees, from two different countries, two of which required him to become proficient in English - more than signify he has the intelligence, drive, and ability to learn, integrate and use different and diverse concepts, programs and software systems, SPSOF ¶ 1, and that he would be readily "proficient in other integrated student information systems." Assertions to the contrary ignore the very substantial significance of the degrees that the plaintiff obtained, not the least of which was one from Yale. Mr. Azam made this point to Pamela O'Donnel. Mr. Azam stated of Ms. Ovelar, "She wrote me up for just arguing with Pamela O'Donnell..." SPSOF ¶ 34. He explained that he made the point, in an attempt to file a grievance for being rejected for a position, that "when I went to her to give her -- to file a grievance, she said, No, they are right. They cannot do whatever they want. They don't need education. Education is not necessary. I told her, if education is not necessary, why we have Yale University. We should close down the university and start training people, and she became angry with me." SPSOF ¶ 34.

### 2. Plaintiff has provided sufficient evidence for an inference of discrimination / Defendant's Proffered Reasons for Its Actions Are Pretextual

#### a. The Circumstances Behind the Defendant's Failure to Promote Mr. Azam Militate Toward a Finding in Favor of an Inference of Discrimination

There is a substantial issue raised by defendant's own statements that the failure to promote Mr. Azam was in part due to discriminatory animus based on the perception of him as being a terrorist threat, as a Muslim of Pakistani origin. It is well accepted that showing evidence of pretext or providing evidence which gives rise to an inference of pretext is enough to get the discrimination claims through summary judgment. LaFond, 50 F.3d at 173.

18

### b. A Determination of Fact Regarding the Credibility of Competing Testimony is Not Appropriate at this Time

The race, nationality, and religious discrimination is directly placed at issue by virtue of the dispute as to whether Mr. Azam was considered a terrorist, or a candidate for terrorism, by Ms. Ovelar, who took no meaningful action regarding discriminatory comments, knew about them, minimized them and therefore aided and abetted the toxic environment. Mr. Azam stated that he opposed discriminatory treatment: he stated he "was fed up with the attitude of Dorothy Ovelar mistreating me" in the department SPSOF ¶ 29; principally, offensive to Mr. Azam was that Ms. Ovelar regarded Mr. Rondina's comments that the defendant was a "terrorist," and that the defendant was a terrorism threat, as a joke, and she took no disciplinary action to remedy the situation. Ovelar's deposition testimony makes this clear. She first states the following: "And the person who said it was allegedly joking, they thought that it was funny." SPSOF ¶ 30 When pressed, she acknowledges that the plaintiff did not use the word *joking* when he shared his concern. This difference in perception over whether the use of the word *terrorist* in conjunction with the plaintiff was discriminatory and problematic is an issue to be decided by a trier of fact. The weight to be accorded that toxic environment, those toxic remarks, should be left to a jury determination.

Ms. Ovelar took over as Mr. Azam's supervisor after Patricia Brown had been Mr. Azam's supervisor for five years.  SPSOF ¶ 31. Mr Azam explains the genesis for the discriminatory treatment: "When the change came in, when I started growing a beard, the first comment from my director in the department, Patricia Brown, she said to me that you are just like – becoming just like terrorist." SPSOF ¶ 32. Mr. Azam testified in his deposition to the

following as well: "And one time she said to me, because I was angry with her, she said, 'You are not going to blow up this building.'" SPSOF ¶ 32. Mr. Azam, was shortly after that, reassigned to have Ms. Ovelar as his supervisor. Mr. Azam was present during a meeting with both Ms. Brown and Ms. Ovelar, and it was clear that both were aware of Ms. Brown's concern. Once he grew the beard, there was a general perception that he was no longer viewed as just another colleague but as a potential religious and foreign national threat in the department.

Importantly, the use of the derogatory term "terrorism" is per se discrimination, as the court in Dion Berryman, et al., v. Supervalu Holdings, Inc., et al., explains, with respect to a word with arguably equal offense and applicability:

> As this Court has recognized, "[t]hat the word 'nigger is a slur is not debatable," "irrespective of its common usage and without regard for the race of those who use it," and no employer should tolerate its usage.  NLRB v. Foundry Div., Alcon Indus., 260 F.3d 631, 635 & n.5 (6th Cir. 2001).  Indeed, as other circuits have observed, the word is "[f]ar more than a 'mere offensive utterance;'"it "is pure anathema to African Americans."  White v. BFI Waste Servs., 375 F.3d 288, 298 (4th Cir. 2004) (citing Rodgers v. Western-Southern Life Ins. Co., 12 F.3d 668, 674-75 (7th Cir. 1993) ("Perhaps no single act can more quickly 'alter the conditions of employment and create an abusive working environment,' . . . than the use of an unambiguously racial epithet such as 'nigger' by a supervisor in the presence of his subordinates.")) (other citations omitted).  See also Spriggs v. Diamond Auto Glass, 242 F.3d 179, 185 (4th Cir. 2001); Brown v. E. Miss. Elec. Power Ass'n, 989 F.2d 858, 860 (5th Cir. 1993) ("term 'nigger' is a universally recognized opprobrium, stigmatizing African-Americans because of their race"); Bailey v. Binyon, 583 F. Supp. 923, 927 (N.D. Ill. 1984) ("use of the word 'nigger' automatically separates the person addressed from every non-black person; this is discrimination per se.").  This is so because the word "nigger" "evokes a history of racial violence, brutality, and subordination."  See McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1116 (9th Cir.

2004) ("beyond question . . . use of the word 'nigger' is highly offensive and demeaning"). *Id.*

The word *terrorist* is regarded similarly. The Court in <u>Gaspari v. FMC Techs., Inc.</u>, No. CV H-13-2353, 2016 WL 1055642 (S.D. Tex. Feb. 4, 2016), <u>report and recommendation adopted</u>, No. 4:13-CV-02353, 2016 WL 1070859 (S.D. Tex. Mar. 15, 2016) treated the word *terrorist* as an important part of the plaintiff's discrimination case. "In this day and age, being called a "terrorist" based solely on a person's national origin may be considered harassment that is 'severe.'" <u>Id</u>. at 11.

While the Court in <u>Gaspari</u> granted defendant's summary judgment motion, the distinctions between the facts of that case and the facts of this one are instructive. In <u>Gaspari</u>, the grant of defendant's summary judgment rested on two important distinct differences. First, it rested on the fact that there was no adverse action taken against the defendant. Unlike in <u>Gaspari</u>, where there was no adverse action, here, Mr. Azam was denied promotions, a clear adverse action. The Second Circuit has held that denial of promotion is an adverse action.

> "[T]here is no exhaustive list of what constitutes an adverse employment action. Courts have held that termination, demotion, denial of promotion, addition of responsibilities, involuntary transfer that entails objectively inferior working conditions, denial of benefits, denial of a requested employment accommodation, denial of training that may lead to promotional opportunities, and shift assignments that make a normal life difficult for the employee, among other things, constitute adverse employment actions."

<u>Benedith v. Malverne Union Free Sch. Dist.</u>, 38 F. Supp. 3d 286, 324 (E.D.N.Y. 2014) (citing <u>Little v. NBC</u>, 210 F.Supp.2d 330, 384 (S.D.N.Y.2002)).

Second, <u>Gaspari</u>'s grant of summary judgment rested on the fact that the analysis was considered in the context of a hostile work environment claim. Here, the claim is limited to discrimination and thus avoids the more stringent requirements applicable to the "severe and pervasive" standard.

The issue of the differing perceptions by Mr. Azam and Ms. Ovelar as to the severity of being called a terrorist, and whether this comment played into the defendant's hiring managers claim that the defendant did not "work well" with others (See *supra* section V.A.1.a.ii) is a question of fact for the jury.

Then again, in July 2017, there was an incident in which two very different accounts of facts arose. The facts of the incident bear on the perception held by Yale that Mr. Azam was a terrorist threat. Ms. Ovelar claimed that Mr. Azam used the words "Go postal." SPSOF ¶ 33. Mr. Azam testified that he did not use those words SPSOF ¶ 34. Mr. Azam was suspended for three days. Noticeably absent from the suspension letter provided by Ms. Ovelar was any specific reference to what Mr. Azam allegedly said. The only assertion was general: "You made comments to a colleague that were implied threats of violence in the workplace." SPSOF ¶ 35. Crucially, Ms. Ovelar was unable to testify to exactly what Mr. Azam had said, she was only testified to "something to the effect" of what he had said. She testified: "I was told that in the process of a conversation, he was expressing frustration to Pamela and he said something to the effect of 'This is the kind of thing that could make someone go postal.'" SPSOF ¶ 36.  For such an assertion, one would expect the account to be precise. In fact, Ms. Ovelar testified that Mr. Azam used the words "go postal" twice. SPSOF ¶ 36. Yet, as to neither uses of the phrase could she precisely state what Mr. Azam had allegedly said.

As a result of the foregoing, Mr. Azam was suspended and treated as a terrorist threat,

when there is a significant dispute as to the accuracy of the comments being made. The suspension is part of a pattern whereby Mr. Azam is seen as a potential terrorist threat and such a perception relates to his Muslim appearance.  Mr. Azam's account is captured in a letter he submitted. He states:

> "I have known Ms. O'Donnell for nearly 15 years and I went to her as a Local 34 Rep, colleague, and someone I considered a friend, even though she mistreated me many times in the past. It is purely malicious that she has completely twisted and manipulated my words of frustration to make them seem like I had made a threat. Had I known that she did not respect me in the same manner I respect her, I would have restricted my interaction with her to strictly written email correspondence. I would like to reiterate that I never threatened her and I do not know what made her think like that." SPSOF ¶ 37.

There is a clear dispute over the facts. This is part of a pattern.

Mr. Ken Suzuki, the president of the Local 34 articulated a related concern. Mr. Azam testified, "Mr. Ken Suzuki, he came to me after my suspension and he told me that the university suspended you because they fear that you blow up, because the injustice is going on from 2001 (September 11, 2001, the destruction of the Twin Towers in New York City by Muslim terrorists) until now." SPSOF ¶ 38. These terms "blow up" "go postal" "terrorist" are part of a discriminatory pattern of considering Muslims as incipient terrorists. This once again presents an issue to be decided by a jury.

> **c. Circumstances giving rise to the inference of race, national origin, religious discrimination; During 2016, Plaintiff was subjected to several discriminatory statements and actions that directly relate to the failure**

to promote plaintiff.

### i. Race, national origin discrimination was a basis for failure to promote

Ms. Ovelar's role in the discriminatory environment is significant and relates to the failure to promote Mr. Azam. Not long after Mr. Azam had a discussion with his supervisor Ms. Brown in which she expressed concern that Mr. Azam was going to "blow up this building" SPSOF ¶ 32, in about July 2016, Mr. Azam reported to Ms. Ovelar an incident in which he was called a terrorist. After the Orlando shooting, Mr. Peter Rondina, Administrative Assistant, called the plaintiff a terrorist quite a few times because of his Muslim religion, nationality and race and although it was heard by Ms. Ovelar, she failed to take any action. Ms. Ovelar did not discipline Rondina nor did she mandate any training for him. Ms. Ovelar, referring to training, incorrectly stated, "I can't mandate people to do that." SPSOF ¶ 39. As noted earlier *supra* V.A.2.b, Ms. Ovelar, in her deposition testimony explained that she considered Rondina to be joking, but then acknowledged that Mr. Azam did not say Rondina was joking. SPSOF ¶ 30. Her choice to interpret the statements in a non-discriminatory way raised a factual issue. The (i) inaction on the part of Ms. Ovelar to take meaningful action to address discriminatory comments, (ii) combined with the failure of the defendant to provide plaintiff interviews for positions for which he was clearly qualified, or (iii) not offering interviews without further action to ascertain the candidates qualifications is sufficient to establish a prima facie case of discrimination. In Tolbert v. Smith, 790 F.3d 427 (2d Cir. 2015) the Court found that a combination of irregularities in procedures along with alleged remarks "are sufficient to establish a prima facie case of discrimination." A failure to discipline, or even mandate training for Rondina can be viewed as an irregularity in procedure.

24

In Tolbert, the same individual both made the remarks and changed the procedures.

> The plaintiff submitted evidence that Principal Smith changed the person who conducted Mr. Tolbert's year-end evaluation without providing notice to Mr. Tolbert,[9] that Principal Smith relied on the 2008–2009 evaluations in isolation, and that the unsatisfactory performance reviews by Ms. Avery–DeToy were aberrational. These irregularities, when combined with Principal Smith's alleged remarks, are sufficient to establish a prima facie case of discrimination. See Back, 365 F.3d at 124–25 (finding sexist remarks and procedural irregularities sufficient to rebut a nondiscriminatory reason for denying tenure).

> [9] While the defendants assert that Mr. Tolbert's evaluation was reassigned because Mr. Muhammad was having difficulty completing his evaluations on time, it is for a jury to decide whether that explanation is credible and rebuts any inference of discrimination that could be drawn from the alleged procedural irregularity. Id.

Here, the same individual, Ms. Ovelar, failed to take action to discipline an individual who made clearly offensive discriminatory remarks and she also does not recall participating in a hiring decision, an adverse decision which found that plaintiff, "did not have proven ability to work well with all levels of staff." SPSOF ¶ 12. The fact that Mrs. Ovelar permits an ongoing anti-Muslim environment to exist in her department creates an issue for the trier of fact to determine issues of credibility including the statement that she does not recall, but cannot say with finality, whether she participated in the promotional decision-making. SPSOF ¶ 9.

### ii. Pretextual justification – plaintiff works well with all levels, contrary to defendant's allegation supporting its reason for denial of position 1 and 2

Support for the assertion that defendant's actions and failure to promote Mr. Azam were pretextual, include, (as noted above, where the emphasis was on establishing that Mr. Azam was qualified, supra section V.A.1.a.ii, and V.A.2.b) the false and incorrect allegation that Mr. Azam

did not work well, which is restated here, summarily. Mr Azam's expressed concerns about discriminatory comments being made about him improperly formed the basis of defendant's assertion that plaintiff "did not have proven ability to work well with all levels of staff." (Docket No. 56, 3) SOF 10, 28; SPSOF 12. The defendant provided no evidence to support its assertion that the plaintiff did not have the proven ability to work well with all levels of staff." In fact, the plaintiff has provided sufficient evidence to support his assertion that he did work well with others of all levels. See *supra* section V.A.1.a.ii, and V.A.2.b. The evidence includes several letters of recommendation from various levels of staff stating clearly that the defendant did work well with all levels of staff. SPSOF ¶¶ 13-18.

### iii. Pretextual justification - plaintiff was not a risk to violate confidentiality - as alleged in reason for denial of position 3

The defendant's assertion that Mr. Azam "did not demonstrate evidence of having proficiency in confidentiality" SPSOF ¶ 24 is erroneous and not supported by the facts. This assertion relied upon is not only erroneous, it reveals a discriminatory basis for denying Mr. Azam an interview. The idea that Mr. Azam was not competent in keeping information confidential was based on the concern that defendant decision-makers, in this case, Alexa Martindale and Joel Silverman, had with him being a Muslim, Pakistani. Defendant gave no legitimate basis for the concern. There is a handwritten note on Mr. Azam's resume, provided by Mr. Silverman, as an attachment to his affidavit " - confidentiality?" There is nothing in the resume to suggest confidentiality is a concern SPSOF ¶ 24. Both Mr. Silverman and Ms. Martindale were the decision-makers for denying Mr. Azam the position. SPSOF ¶ 24.

### iv. Pretextual justification - plaintiff's errors on his resume were a pretextual justification for denying him an interview for position 3

Defendant's denial of an interview for position 3, for Mr. Azam, in part, on the basis of a conclusion that Mr. Azam was "wanting in attention to detail" citing a limited number of errors, is pretextual, as discussed in detail, *supra* section V.A.1.a.iv. SPSOF ¶ 25. The position requisition includes the following: "Excellent written and oral communication skills. A writing sample will be required of all those who are interviewed." SPSOF ¶ 41. (See Defendant's Affidavit by Alexa Martindale, Exhibit A, 2). The defendant had written a successful master's thesis for Yale and had possessed two other master's degrees, thus demonstrating a more than sufficient writing capability for the position.

### 3. Plaintiff has provided direct evidence and thus need only satisfy the mixed-motive <u>Price Waterhouse</u> standard

Plaintiff has provided direct evidence and thus need only satisfy the mixed-motive standard. Plaintiff need only show that race was a motivating factor in the defendant's decision to not interview Mr. Azam. See <u>Miko v. Commission on Human Rights & Opportunities</u>, 220 Conn. 192, 204–05, 596 A.2d 396, 403 (1991) (when a plaintiff presents direct evidence of discrimination, the McDonnell Douglas formulation does not apply; rather, such cases are analyzed under the standards enunciated in Price Waterhouse ); <u>Levy v. Commission on Human Rights & Opportunities,</u> 35 Conn.App. 474, 482, 646 A.2d 893, 897 (1994) (same); see also <u>Tyler v. Bethlehem Steel Corp.</u>, 958 F.2d 1176, 1180–86 (2d Cir.) (discussing the differences between "pretext" cases which apply McDonnell Douglas, and "mixed-motive" or "direct evidence" cases which apply Price Waterhouse ), cert. denied, 506 U.S. 826, 113 S.Ct. 82, 121 L.Ed.2d 46 (1992).

Here, plaintiff has shown that there is direct evidence of racial, national origin, and religious discrimination. Mr. Azam testified that he was treated as a terrorist threat, with comments made by his supervisor, Patricia Brown, and in front of his subsequent supervisor, Ms. Ovelar, which she ignored. See section V.A.2.b, *supra*.

However, though not essential, in addition, for each of the four positions, for which Mr. Azam was passed over, a person not in plaintiff's protected class was hired.

"To establish his prima facie case of age discrimination, the plaintiff's evidence must "create a reasonable inference that age … was a determining factor in the employment decision." Cuddy v. Carmen, 694 F.2d 853, 856-57 (D.C.Cir.1982). Specifically, the plaintiff must prove, inter alia, that he was performing his job well enough to meet the defendant's legitimate expectations, and was disadvantaged in favor of a similarly situated younger employee. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). The Second Circuit, in Zimmermann v. Assocs. First Capital Corp., 251 F.3d 376, 381 (2d Cir. 2001), held "the mere fact that a plaintiff was replaced by someone outside the protected class will suffice for the required inference of discrimination at the prima facie stage of the Title VII analysis." Id. Though Plaintiff need not establish this by virtue of the direct evidence he provided, which establishes that there was an inference of discrimination, plaintiff has also established this fact to meet the indirect requirement.

## B. Plaintiff Has Established All the Elements of His ADEA Prima Facie Case of Age Discrimination Under the Indirect Method of Proof

To establish a prima facie case for discriminatory failure to promote, a plaintiff must demonstrate that:  1) he is a member of a protected class;  2) he applied for promotion to a position for which he was qualified;  3) he was rejected for the position;  and 4) the employer kept the position open and continued to seek applicants.  See *Brown v. Coach Stores, Inc.*, 163 F.3d 706, 709 (2d Cir.1998) (citing McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)). Anthony Mauro v. Southern New England Telecommunications, Inc., 208 F.3d 384 (2d Cir. 2000).

## 1. Defendant reveals discriminatory animus – age discrimination

### a. But-for cause: A scheme to discourage the plaintiff: "Too old to apply"

Plaintiff was seventy years of age in 2016 and a review of his resume would clearly reveal his advanced age. Plaintiff applied for "Senior Administrative Assistant 2, Req. No. 40696BR, (also referred to herein as "position 4"). SPSOF ¶ 42. During the interview for the position, December 5, 2016, with a panel of interviewers, Ms. Daria Vander Veer, Assistant University Registrar, commented to the plaintiff, "Don't tell me that you are that old."  Her ageist statement arose in the context of Mr. Azam stating, of his knowledge of Excel, that he has been using the program since its infancy, working with a predecessor program, Lotus 123. SPSOF ¶ 43. He was making a neutral comment relating to the length and breadth of his experience with Excel. Her focus on his age rather than on his experience raises a legitimate question concerning the suitability of Mr. Azam for the position, and regarding discrimination against him based on his age. Again, this is a question for the jury (i.e., age as a factor in the selection of a replacement candidate for an essential position).

This interview occurred after the plaintiff sought three positions previously for which he was not interviewed. It was a deliberate attempt to send the plaintiff a subtle message: "Over a certain age, you need not apply." The comment revealed a bias on the part of an interviewer relating to the position and the candidate's age.

The utterance of that statement raises the issue of whether age was a material consideration which again is an issue for the jury to decide. It clearly showed that age was on the mind of at least one member of the panel. The extent to which it colored the decision is an issue for the jury.

That Mr. Azam was "that old" was something known by many  and it bears not only on this fourth position, the one in which an interview was granted, but also for the ones, in rapid succession, immediately prior to this one for which no interview was given: One in July (Req. No. 37619BR, rejected July 14, 2016), one in late November (Req. No. 38875BR,  rejected November 28, 2016), another in early December (Req. No. 40580BR, rejected December 7, 2016), and this one in December  (Req No. 40696BR). The plaintiff testified that they all knew him and they all knew his age. He wasn't a young man at the time he applied, and he said he had dealt with everybody in the administration. It was not exactly a secret. SPSOF ¶ 44. In this panel, that is where the discriminatory bias surfaced. The pervasiveness was testified to by Mr. Azam. He testified, "I have been told by the union that they hired – want to hire – they don't want to hire you because of your age. It has been commented by the union people, because I asked them to file a grievance. When I file grievance, they brought that – they told me that the person who was hired was younger and known to them already." SPSOF ¶ 45.

Ms. Vander Veer's statement can be considered in conjunction with positions for

which she was not involved. The Supreme Court in *Sprint/United Mgmt. Co. v. Mendelsohn*, 128 S.Ct. 1140 (2007) offered guidance on the treatment of "other acts" of age discrimination. The Court explained: "[t]he question whether evidence of discrimination by other supervisors is relevant in an individual ADEA case is fact-based and depends on many factors, including how closely related the evidence is to the plaintiff's circumstances and theory of the case." The Court further explained: "[a]pplying Rule 403 to determine if evidence is prejudicial also requires a fact-intensive, context-specific inquiry." Id.

Here, considering the direct comment and the defendant's clear qualifications for all four positions, age is the but-for cause.

### b. Defendant raises on his own a material dispute of fact

Defendant disputes, materially, that Ms. Vander Veer stated in an interview, "Don't tell me you are that old" when defendant refers to that comment as "a comment allegedly made." (SOF ¶ 60). Was the comment made, the plaintiff says it was, the defendant says it was not. This is unambiguously a material fact in dispute. If the plaintiff's account that it was stated is believed, then the conclusion, ipso facto, is the defendant has a reason to be untruthful and more likely than not an impermissible factor.

### 2. Plaintiff reveals discriminatory animus – age discrimination

### a. The Plaintiff established a prima facie case using the McDonnell Douglas indirect method of proof

The plaintiff has established a prima facie case of age discrimination. In Willis, supra, the court offers guidance as to what is required to establish age discrimination. While

the case refers to the replacement of an employee, the black letter is also relevant to failure

to promote. In <u>Willis</u> the Court held:

> The elements of a prima facie case of age discrimination are that: (1) the plaintiff is
> at least forty years old; (2) the plaintiff suffered an adverse employment decision; (3)
> the plaintiff was qualified for the position in question; and (4) the plaintiff was
> ultimately replaced by another employee who was sufficiently younger so as to
> support an inference of a discriminatory motive." *Id*.

But the test is not 'intended to be rigid."

> "This Court has indicated the prima facie case is not "intended to be rigid, mechanized,
> or ritualistic." <u>Pivirotto</u>, 191 F.3d at 352 (quoting <u>Furnco Constr. Corp. v. Waters</u>, 438
> U.S. 567, 577, 98 S.Ct. 2943, 57 L.Ed.2d 957 (1978)). Where the plaintiff is not directly
> replaced, the fourth element is satisfied if the plaintiff can provide facts which "if
> otherwise unexplained, are more likely than not based on the consideration of
> impermissible factors." Id.

Plaintiff's evidence that in a panel interview Ms. Vander Veer stated, "Don't tell me you are

that old" is the provision of a fact that reveals some "consideration of an impermissible

factor" related to a failure to promote Mr. Azam. The <u>Willis</u> holding relates to the adverse

employment action of replacement but could similarly apply to the adverse action of failure

to promote.    Courts have held that the burden of proving a prima facie case under ADEA is

de minimus. "The Second Circuit has clearly stated that the plaintiff's burden in establishing

a prima facie case is de minimis. Auerbach, 136 F.3d at 109-10; Criley v. Delta Air Lines,

Inc., 119 F.3d 102, 104 (2d Cir.1997)." Ranieri v. Highland Falls-Fort Montgomery School

Dist., 198 F.Supp.2d 542, 544 (S.D.N.Y.,2002). Here, plaintiff has met that burden.

 Having established a prima facie case, nevertheless, the plaintiff must address the

defendant's proffered legitimate business reason, and has the burden of persuasion to show

that the defendant's reason was merely a pretext. Under this indirect method, "The plaintiff

need not prove that age was the employer's sole or exclusive consideration, but must prove

that age made a difference in the decision." *Burton v. Teleflex Inc.*, 707  F.3d 417, 427 (3d

Cir. 2013)  (ADEA and Title VII case) ("To make a showing of pretext, 'the plaintiff must

point to some evidence, direct or circumstantial, from which a factfinder could reasonably

either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an

invidious discriminatory reason was more likely than not a motivating or determinative

cause of the employer's action'" (quoting *Fuentes v. Perskie*, 32 F. 3d 759, 764 (3d Cir.

1994). Note, both of these two reasons are not required. The second of these two numbered

alternatives was not at issue in *Burton*, because the court relied on the first alternative,

holding that there was evidence that would justify a factfinder in disbelieving the

employer's stated reason. See id. at 431.

In the instant case, a factfinder is justified in disbelieving the employer's stated

reason, given Mr. Azam's numerous recommendations, strong performance reviews, the

comment made by Ms. Vander Veer, educational attainments, and the suspect nature of the

proffered reasons (discussed above, sections A.1.a.i-iii and A.2.c.iii-iv). "To show that an

employer's proffered reason is pretextual, a plaintiff must do more than demonstrate that the

employer made a mistake. Instead, the plaintiff must demonstrate the employer's reason is

unworthy of belief." <u>Koski v. Standex Int'l Corp.</u>, 307 F.3d 672, 677 (7th Cir.2002). To meet the

<u>Kolski</u> standard, it is sufficient for the plaintiff to show: "(1) the proffered reasons are factually

baseless, (2) the proffered reasons were not the actual motivation for the discharge, or (3) the

proffered reasons were insufficient to motivate the discharge." <u>Gusewelle v. City of Wood

River</u>**,** 374 F.3d 569, 575 (7th Cir. 2004). Here, the proffered reasons the defendant gave (he

allegedly did not know Banner, he allegedly did not work-well with others, he made errors)

were "insufficient to motivate" their failure to promote him.

### b. Material Fact Dispute

Once the employer has substantiated a legitimate non-discriminatory reason for the employment action, courts have held that the sole remaining issue is discrimination *vel non*. The defendant, here, has offered reasons for its action. Courts have held, "If the defendant successfully presents a legitimate, non-discriminatory reason for its action, "the McDonnell Douglas framework–with its presumptions and burdens–disappears, and the sole remaining issue is discrimination *vel non*." Lathram v. Snow, 336 F.3d 1085, 1088 (D.C.Cir.2003) (internal citations omitted). At this point, to survive summary judgment, the plaintiff "must show that a reasonable jury could conclude from all of the evidence that the adverse employment decision was made for a discriminatory reason." Id. (citing Aka, 156 F.3d at 1290). The court must therefore consider whether a jury could infer discrimination from (1) the plaintiff's prima facie case, (2) any evidence the plaintiff presents to attack the employer's proffered explanation, and (3) any further evidence of discrimination that may be available to the plaintiff. Waterhouse v. District of Columbia, 298 F.3d 989, 992-93 (D.C.Cir.2002) (quoting Aka, 156 F.3d at 1289). The plaintiff need not present evidence in each of these categories in order to avoid summary judgment. Id. Instead, the court should assess the plaintiff's challenge to the defendant's explanation in light of the total circumstances of the case. Id. at 1291." Mianegaz v. Hyatt Corp., 319 F.Supp.2d 13, 19 -20 (D.D.C.,2004).

Plaintiff has established a clear material factual dispute as to Mr. Azam's qualifications**.** The defendant's proffered reasons were insufficient to motivate the failure to promote. The defendant provided no evidence that Mr. Azam did not work well with "all levels of faculty and staff" (other than blanket assertions without support, SOF ¶ 10) and

plaintiff provided evidence he did. Mr. Azam had received no disciplinary actions in over 15 years of employment with Yale University and he had numerous recommendations from various levels of employees. SPSOF ¶ 13-18. He held three master's degrees, including one from Yale University. SPSOF ¶ 2. Mr. Azam was the Undergraduate Registrar for economics, the largest major in the school, and responsible for over 500 students. SPSOF ¶ 46. Similarly, the defendant provided no evidence that Mr. Azam was not skilled in Banner and other student information systems and plaintiff provided evidence he was. SPSOF ¶ ¶ 8,10, 27. These were the two reasons given for not promoting Mr. Azam to positions 1 and 2, Req. Nos. 37619BR and 38875BR. SOF ¶ 10. Notably, as noted above, section A.1.a.ii., in Ms. Marshall's Affidavit, and as per Ms. Marshall's rejection letter, dated November 28, 2016, for Req. No. 38875BR, position 2, the wrong criterion for the position was stated as lacking. Ms. Marshall states "Plaintiff did not have a proven ability to work well with all levels of faculty and staff." That was the requirement for position 1, not for position 2. The form letter response reflects the pre-ordained decision. The actual requirement for position 2, reads: "Demonstrated ability to work effectively with and foster collaboration among a wide range of individuals and constituencies in a large, complex academic environment. Ability to negotiate successfully and under pressure." SOF ¶ 23. Mr. Azam possessed these qualities as well. SPSOF ¶ ¶ 13 - 18.

The second of the two positions was denied for the additional spurious reason that Mr. Azam did not have "four years of central registrar experience or equivalent administration experience." Docket 56, 11, SOF ¶ 22. This is not accurate. As noted above, section I.A.1.iii, *supra*, Plaintiff's experience as an Undergraduate Registrar required him to perform numerous administrative roles. Those roles include management of numerous

systems and interfaces, including webpage and database systems, CIM, a system for faculty, and informing faculty and staff about Identity Finder and FERPA regulations among numerous other administrative roles. SPSOF ¶ 22-23. And as noted above, section I.A.1.iii, *supra*, the requisition called for a combination of education and experience SPSOF ¶ 47.

As for the stated reason, for denying Mr. Azam an interview for position 3, Req. No. 40580BR, inattention to detail and concerns regarding confidentiality, as referred to previously, both Dean Joel Silverman and Alexa Martindale themselves, state erroneously, in their affidavits, that the position that they were interviewing for and hiring for was titled "Senior Administrative Assistant." SOF ¶ 45. In fact, the correct title is Senior Administrative Assistant 2. SPSOF ¶ 25. Despite, Dean Silverman stating this title incorrectly in his signed affidavit no less than twelve times and Ms. Martindale stating it incorrectly in her sworn statement no less than eight times, the two cite, as a reason for not interviewing Mr. Azam, inattention to detail, basing that on limited typographical errors in Mr. Azam's resume. SPSOF ¶ 25. Ms. Ovelar, Mr. Azam's supervisor, herself has made numerous errors. SPSOF ¶ 26. The idea that a minimal amount of typos in a resume rose to a level of questioning Mr. Azam's "attention to detail" is greatly undermined by the fact that comment, handwritten on his resume, by Dean Silverman, sits just above the only other handwritten comment: "confidentiality?" The two taken together suggest racial discrimination. Mr. Azam is a Muslim of Pakistani origin, who at one time worked for the Pakistani government; Dean Silverman seems to be raising confidentiality for that reason. There is a clear factual dispute as to whether the combination of these two factors were of legitimate concern, or whether, as has been demonstrated were pretextual bases for discriminatory treatment.

For each of the four positions, for which Mr. Azam, seventy years old, was passed over, a significantly younger candidate was hired.

These facts satisfy the requirement stated as follows**:** "To establish his prima facie case of age discrimination, the plaintiff's evidence must "create a reasonable inference that age … was a determining factor in the employment decision." <u>Cuddy v. Carmen</u>, 694 F.2d 853, 856-57 (D.C.Cir.1982). Specifically, the plaintiff must prove, inter alia, that he was performing his job well enough to meet the defendant's legitimate expectations, and was disadvantaged in favor of a similarly situated younger employee. Reeves v. Sanderson Plumbing Products, Inc., 530 U.S. 133, 141, 120 S.Ct. 2097, 2105, 147 L.Ed.2d 105 (2000). Plaintiff has established this.

**VI.**     <u>**CONCLUSION**</u>

For all the foregoing reason, Yale's Motion for Summary Judgment should be denied in its entirety.


**THE PLAINTIFF**
QAZI AZAM

By_____/s/_____
     Eugene Axelrod, Esq. (ct00389)
     Axelrod & Associates, LLC
     8 Lunar Drive
     Woodbridge, CT 06525
     Tel. (203) 389-6526
     Fax (203) 389-2656
     eaxelrod@axelrodlegal.com

## <u>CERTIFICATION</u>

This is to certify that a copy of the foregoing was filed electronically on the 9th day of

March, 2020. Notice of this filing will be sent via e-mail to all parties by the operation of the

Court's electronic filing system.

_____/s/_____ Eugene
Axelrod, Esq. (ct00389)

Exhibit List:

Exhibit A: Plaintiff Dep., p24.
Exhibit B: Ovelar Dep, p134-135
Exhibit C: Plaintiff Dep., p94
Exhibit D: Plaintiff Affidavit
Exhibit E: Plaintiff Dep., p51
Exhibit F: Plaintiff Dep., p52
Exhibit G: Plaintiff Dep., p53
Exhibit H: Plaintiff Dep., p84
Exhibit I: Ovelar Dep. p101
Exhibit J: Plaintiff Dep., p19
Exhibit K: Plaintiff Resp. I & P, 14-17
Exhibit L: Plaintiff Resp. I & P, 22-23
Exhibit M: Plaintiff Dep., p93
Exhibit N: Plaintiff personnel file, recommendations
Exhibit O: Plaintiff Dep., p33-34, 36
Exhibit P: Plaintiff Dep., p104-105
Exhibit Q: Ovelar Dep., p126-130
Exhibit R: Plaintiff Dep., p70
Exhibit S: Ovelar Dep., p99
Exhibit T: Plaintiff Resp. I & P, 14-17
Exhibit U: Plaintiff Dep., p42
Exhibit V: Ovelar Dep., p90
Exhibit W: Plaintiff Dep., p43
Exhibit X: Plaintiff personnel file, suspension letter
Exhibit Y: Plaintiff personnel file, appeal letter
Exhibit Z: Plaintiff Dep., p72
Exhibit AA: Ovelar Dep., p100

Exhibit AB: Plaintiff Resp. I & P, 9-10
Exhibit AC: Plaintiff Dep., p50
Exhibit AD: Plaintiff Dep., p60