**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

```
------------------------------- x
QAZI T. AZAM,                   :
                               :
          Plaintiff,           :
                               :
          v.                   :  Civil No. 3:18-cv-1260(AWT)
                               :
YALE UNIVERSITY,               :
                               :
          Defendant.           :
------------------------------- x
```

## RULING ON MOTION FOR SUMMARY JUDGMENT

Plaintiff Qazi Azam filed this suit against his employer, Yale University ("Yale") after it did not promote him to three positions for which he applied. He brings claims under Title VII of the Civil Rights Act, 42 U.S.C. §§ 2000e et seq., the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 et seq., and the Connecticut Fair Employment Practices Act ("CFEPA"), Conn. Gen. Stat. §§ 46a-60 et seq., alleging discrimination based on his race, national origin, ancestry, ethnicity, religion, and age. Yale moves for summary judgment on Azam's claims. For the reasons set forth below, its motion is being granted.

## I.   FACTUAL BACKGROUND

Azam is a Pakistani, Southeast Asian, Muslim male of deeper complexion. He holds three master's degrees, one from Yale in economics, another from Washington State University in

agricultural economics, and a third from Sindh Agricultural
University also in agricultural economics.  Azam has been
employed by Yale since 2001.  He held various positions from
2001 through 2005.  Since 2005, he has worked as an
undergraduate registrar in the Economics department.

In 2016, Azam applied internally for three positions at
Yale which are relevant to the claims in this case.  He was not
interviewed for and ultimately not selected for any of the
positions.  None of the decision makers for any of the positions
contacted Azam or his supervisor for further information.  Azam
states that his union representative told him that Yale did not
want to hire Azam because of his age.  He also states that his
union representative told him that the persons hired for the
positions Azam sought were younger and less qualified.

First, Azam applied for the Senior Administrative Assistant
2 position (Requisition Number 37619BR).  The job description
indicated that for this position, Yale, inter alia, required
"[p]roven ability to work well with all levels of faculty and
staff with professionalism and courtesy" and preferred
"[k]nowledge of Banner or other integrated student information
systems."  (Aff. of Shonna Marshall Supp. Def.'s Mot. Summ. J.
("Marshall Aff."), Ex. A., at 2, ECF No. 61.)  Azam was not
interviewed for the position.  Shonna Marshall, Associate
University Registrar, was the decision maker with respect to

hiring for the position.  In a July 14, 2016 letter, Marshall
informed Azam that Yale had selected another candidate for the
position.  She stated that Yale's "highest preference was for a
candidate who demonstrated evidence of having the most
proficiency" in staff supervisory experience and familiarity
with Banner.  (Id., Ex. D, at 1.)  She stated that Yale selected
"another candidate who most closely meets the skills and
qualifications of the position."  (Id., Ex. D, at 1.)

Second, Azam applied for the Assistant University Registrar
position (Requisition Number 38875BR).  The job description
provided that for this position, Yale required, inter alia, a
"[b]achelor's degree and four years of experience in a central
registrar's office or in a comparable area of academic
administration or an equivalent combination of education and
experience," and "[d]emonstrated ability to work effectively
with and foster collaboration among a wide range of individuals
and constituencies in a large, complex academic
environment. . . . "  (Id., Ex. B, at 2.)  Yale preferred
"[f]amiliarity with DegreeWorks degree audit system and/or
Banner student information system."  (Id., Ex. B, at 2.)  Azam
was not interviewed for the position.  Marshall was also the
decision maker with respect to this position.  In a November 28,
2016 email, Marshall informed Azam that Yale had selected
another candidate for the position.  She stated that Yale's

"highest preference was for a candidate who demonstrated evidence of having the most proficiency" with and experience in "a central registrar's office, working knowledge of Banner or other integrated student information systems, and proven ability to work well with all levels of faculty and staff." (Id., Ex. F, at 1.)  She stated that Yale selected "another candidate who most closely meets the skills and qualifications of the position." (Id., Ex. F, at 1.)

Third, Azam applied for the Senior Administrative Assistant 2, Morse College position (Requisition Number 40580BR).  The job description provided that essential duties included, inter alia, "[m]aintain[ing] confidential academic files for current and former students." (Aff. of Alexa Martindale Supp. Def.'s Mot. Summ. J. ("Martindale Aff."), Ex. A, at 1, ECF No. 59.) Required skills and abilities included "[e]xcellent written and oral communication skills," as well as "familiarity with Yale College academic and undergraduate regulations." (Id., Ex. A, at 2.)  The decision makers with respect to this position were Dean Joel Silverman and Alexa Martindale, Morse College Operations Manager.  In a December 7, 2016 letter, Silverman informed Azam that Yale had selected another candidate for the position.  He stated that Yale's "highest preference was for a candidate who demonstrated evidence of having the most proficiency" with the required familiarity with Yale College

-4-

academic and undergraduate regulations.  (Aff. of Joel Silverman
Supp. Def.'s Mot. Summ. J. ("Silverman Aff."), Ex. B, at 1, ECF
No. 58.)  He stated that Yale selected "another candidate who
most closely meets the skills and qualifications of the
position."  (Id., Ex. B, at 1.)  Silverman and Martindale chose
not to interview or hire Azam because they did not feel he had
adequate proficiency in attention to detail or confidentiality.
Silverman noted multiple typographical errors in Azam's
application materials for this position.

       During his employment at Yale, Azam has been involved in
multiple incidents in which another Yale employee has made
comments about his race, national origin, ancestry, ethnicity,
religion, or age.  With respect to his age, during an interview
for a position which is not the subject of this case, one of the
interviewers, Daria Vander Veer, said "[d]on't tell me that you
are that old," in response to Azam stating that he was familiar
with the predecessor to Microsoft Excel.  (Aff. of Kevin C. Shea
Supp. Mot. Summ. J. ("Shea Aff."), Ex. A., at 50:2-12, 57:20-
58:6, ECF No. 60.)  After Azam applied for an investment analyst
position in 2004, Jay Kang told Azam: "you don't fit the mold
and we have young college graduates for these jobs."  (Pl.'s
Local Rule 56(a)(2) Statement of Facts Opp'n Summ. J. ("Pl.'s
56(a)2"), Ex. 8, at 84:7-23, ECF No. 65-1.)  Azam states that

union personnel informed him that Yale did not want to hire him because of his age.  (Id. ¶ 59.)

With respect to his race, national origin, ancestry, ethnicity, and religion, Azam was involved in multiple incidents with his then-supervisor Patricia Brown.  In or about 2001, after the September 11, 2001 attacks, Brown made comments to Azam referencing his religion, ancestry, and ethnicity.  She made statements "as if [he] was responsible for [the attacks]," and asked him "[y]ou are not going to blow up this building, right[?]"  (Shea Aff., Ex. C, at 29.)  Some time between 2006 and 2008 after Azam began to grow a beard, Brown told him that he was "becoming just like [a] terrorist," (Pl.'s 56(a)2, Ex. 21, at 42:15-19), and told Azam once when he became angry: "[y]ou are not going to blow up this building," (Shea Aff., Ex. A, at 42:16-43:5).  Also, at an unspecified time at an office party, an unidentified individual who was the spouse of a co-worker "started arguing and blaming [Azam] and Muslims for 9/11."  (Shea Aff., Ex. C, at 30.)

More recently, in or about 2016, Peter Rondina, a colleague, said loudly several times: "The terrorists are here and somebody's going to kill me."  (Shea Aff., Ex. A, at 43:6-12.)  Dorothy Ovelar, then and now Azam's supervisor, overheard this comment and did not take any action.  In or about 2017, Pamela O'Donnell, a colleague, claimed that Azam stated in a

threatening manner that he would "go postal" when he became upset about something.  (Pl.'s 56(a)2, Ex. 4, at ¶ 29; id., Ex. 22, at 90:4-7.)  Azam disputes that he used the term "go postal."

Azam states that during interviews for positions not at issue in this case, "body gesture and facial expression were there" evidencing the interviewers' negative attitude towards him.  (Id., Ex. 7, at 53:18-54:3.)  He testified that, with respect to positions generally at Yale, "[t]he person who is hired is a white Caucasian over and over and over again." (Shea Aff., Ex. A, at 59:9-10.)

## II.  LEGAL STANDARD

"A motion for summary judgment may properly be granted . . . only where there is no genuine issue of material fact to be tried, and the facts as to which there is no such issue warrant the entry of judgment for the moving party as a matter of law."  Rogoz v. City of Hartford, 796 F.3d 236, 245 (2d Cir. 2015) (quoting Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010)) (citing Fed. R. Civ. P. 56(a)).  "The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact but only to determine whether, as to any material issue, a genuine factual dispute exists."  Id. (quoting Kaytor, 609 F.3d at 545)

(citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249–50
(1986)).

When ruling on a motion for summary judgment, the court
must respect the province of the jury.  "In reviewing the
evidence and the inferences that may reasonably be drawn, the
court 'may not make credibility determinations or weigh the
evidence . . . .  Credibility determinations, the weighing of
the evidence, and the drawing of legitimate inferences from the
facts are jury functions, not those of a judge.'"  Kaytor, 609
F.3d at 545 (quoting Reeves v. Sanderson Plumbing Prods., Inc.,
530 U.S. 133, 150 (2000)).  "Where an issue as to a material
fact cannot be resolved without observation of the demeanor of
witnesses in order to evaluate their credibility, summary
judgment is not appropriate."  Id. at 546 (quoting Fed. R. Civ.
P. 56(e) advisory committee's note (1963)).

When reviewing the evidence on a motion for summary
judgment, "'the court must draw all reasonable inferences in
favor of the nonmoving party,' 'even though contrary inferences
might reasonably be drawn.'"  Kaytor, 609 F.3d at 545 (citations
omitted) (first quoting Reeves, 530 U.S. at 150; and then
quoting Jasco Tools Inc. v. Dana Corp., 574 F.3d 129, 152 (2d
Cir. 2009)).  "Summary judgment is inappropriate when the
admissible materials in the record 'make it arguable' that the
claim has merit, for the court in considering such a motion

'must disregard all evidence favorable to the moving party that the jury is not required to believe.'" Id. (quoting Jasco Tools, 574 F.3d at 151-52).

Because credibility is not an issue on summary judgment, the nonmovant's evidence must be accepted as true for purposes of the motion.  Nonetheless, the inferences drawn in favor of the nonmovant must be supported by the evidence.  "[M]ere speculation and conjecture is insufficient to defeat a motion for summary judgment." Stern v. Trs. of Columbia Univ., 131 F.3d 305, 315 (2d Cir. 1997) (internal quotation marks omitted) (quoting W. World Ins. Co. v. Stack Oil, Inc., 922 F.2d 118, 121 (2d. Cir. 1990)).  Moreover, the "mere existence of a scintilla of evidence in support of the [nonmovant's] position will be insufficient; there must be evidence on which [a] jury could reasonably find for the [nonmovant]." Liberty Lobby, 477 U.S. at 252.

Also, the nonmoving party cannot simply rest on the allegations in its pleadings since the essence of summary judgment is to go beyond the pleadings to determine if a genuine issue of material fact exists.  See Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000).  "Although the moving party bears the initial burden of establishing that there are no genuine issues of material fact," id., if the movant demonstrates an absence of such issues, a limited burden of

production shifts to the nonmovant, who must "demonstrate more than some metaphysical doubt as to the material facts, . . . [and] must come forward with specific facts showing that there is a genuine issue for trial," Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993) (quotation marks, citations and emphasis omitted).  "Accordingly, unsupported allegations do not create a material issue of fact."  Weinstock, 224 F.3d at 41. If the nonmovant fails to meet this burden, summary judgment should be granted.

Summary judgment is inappropriate only if the issue to be resolved is both genuine and related to a material fact. Therefore, the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment.  A material fact is one that would "affect the outcome of the suit under the governing law."  Liberty Lobby, 477 U.S. at 248.  As the Court observed in Liberty Lobby: "[T]he materiality determination rests on the substantive law, [and] it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs."  Id.  Thus, only those facts that must be decided in order to resolve a claim or defense will prevent summary judgment from being granted.  When confronted with an asserted factual dispute, the court must examine the elements of the claims and defenses at issue on the motion to determine

whether a resolution of that dispute could affect the
disposition of any of those claims or defenses.  See Crawford v.
Franklin Credit Mgmt. Corp., 758 F.3d 473, 486 (2d Cir. 2014)
("[A] complete failure of proof concerning an essential element
of the nonmoving party's case necessarily renders all other
facts immaterial." (quoting Celotex Corp. v. Catrett, 477 U.S.
317, 323 (1986))).  Immaterial or minor factual disputes will
not prevent summary judgment.

**III. DISCUSSION**

Count I is a claim under Title VII for discrimination based
on Azam's race, national origin, ancestry, ethnicity, and
religion.  Count II is a claim under the ADEA for discrimination
based on Azam's age.  Title VII and the ADEA prohibit an
employer from "fail[ing] or refus[ing] to hire . . . any
individual or otherwise discriminate against any individual with
respect to his compensation, terms, conditions, or privileges of
employment, because of such individual's race, color, religion,
. . . or national origin," 42 U.S.C. § 2000e-2(a)(1), or
"because of such individual's age," 29 U.S.C. § 623(a)(1).
Count III is a claim under the CFEPA for discrimination based on
Azam's race, national origin, ancestry, ethnicity, religion, and
age.  The CFEPA, similar to Title VII and the ADEA, prohibits an
employer from "refus[ing] to hire or employ . . . any individual
or to discriminate against such individual in compensation or in

terms, conditions or privileges of employment because of," <u>inter alia</u>, "the individual's race, color, religious creed, age, . . . national origin, [or] ancestry . . . ."  Conn. Gen. Stat. § 46a-60(b)(1).

Azam must also prove causation as to all his claims.  With respect to his ADEA claim, he must prove that his age was the "but-for cause of the challenged employer decision."  <u>Gross v. FBL Fin. Servs.</u>, 557 U.S. 167, 178 (2009).  "Requiring proof that a prohibited consideration was a 'but-for' cause of an adverse action does not equate to a burden to show that such consideration was the 'sole' cause."  <u>Kwan v. Andalex Grp., LLC</u>, 737 F.3d 834, 846 n.5 (2d Cir. 2013).  It is not that a plaintiff must show that a prohibited basis "was the employer's <u>only</u> consideration, but rather that the adverse employment actions would not have occurred without it."  <u>Id.</u> (quoting <u>Fagan v. U.S. Carpet Installation, Inc.</u>, 770 F. Supp. 2d 490, 496 (E.D.N.Y. 2011)).  But with respect to his Title VII claim, Azam may establish causation by proving that one of his protected statuses (<u>i.e.</u>, his race, national origin, ancestry, ethnicity, or religion) was a motivating factor in the failure to promote. See 42 U.S.C. § 2000e-2(m); <u>Vega v. Hempstead Union Free Sch. Dist.</u>, 801 F.3d 72, 86 (2d Cir. 2015).

"Employment discrimination cases (whether brought under title VII or the ADEA) are frequently said to fall within one of

two categories: 'pretext' cases and 'mixed-motives' cases."
Tyler v. Bethlehem Steel Corp., 958 F.2d 1176, 1180 (2d Cir.
1992).  Mixed-motive cases follow the analysis set out in Price
Waterhouse v. Hopkins, 490 U.S. 228 (1989).  Pretext cases are
analyzed under the three-step burden-shifting analysis set out
in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973).

Azam contends that Yale's motion for summary judgment
should be denied for two reasons.  First, he argues that he has
presented sufficient evidence to be entitled to prove his case
under the Price Waterhouse mixed-motive standard and that there
are genuine issues of material fact.  Second, he argues that
genuine issues of material fact also exist as to this case if it
is analyzed under the McDonnell Douglas framework.

A.    **Price Waterhouse Analysis**

In a Price Waterhouse mixed-motive case, the plaintiff can
shift the burden to the defendant by showing that discriminatory
intent was a "motivating" or "substantial" factor in the
employer's adverse employment decision.  See 490 U.S. at 258
(plurality opinion); see also 42 U.S.C. § 2000e-2(m).  The
motivating-factor test is available for Azam's race, national
origin, ancestry, ethnicity, and religion discrimination claims
under Title VII and the CFEPA, as well as his age discrimination
claim under the CFEPA.  See Vega, 801 F.3d at 86 (Title VII);
Levy v. Comm'n on Human Rights & Opportunities, 236 Conn. 96,

-13-

104 (1996) (CFEPA); but see Gross, 557 U.S. at 179 (Price
Waterhouse analysis not available for ADEA claim).[1]  If Azam
succeeds in convincing the factfinder that the illegitimate
factor played a role in the decision, then the burden shifts to
the defendant, who "may avoid a finding of liability only by
proving by a preponderance of the evidence that it would have
made the same decision even if it had not taken the plaintiff's
[protected status] into account."  Price Waterhouse, 490 U.S. at
258 (plurality opinion).

But in a Price Waterhouse case, "the plaintiff must
initially show more than the 'not onerous' McDonnell Douglas-
Burdine factors."  Tyler, 958 F.2d at 1181.  "The types of
indirect evidence that suffice in a pretext case to make out a
prima facie case--or even to carry the ultimate burden of
persuasion--do not suffice, even if credited, to warrant a Price
Waterhouse burden shift."  Sista v. CDC Ixis N. Am., Inc., 445
F.3d 161, 173 (2d Cir. 2006) (quoting Raskin v. Wyatt Co., 125

_____

[1] The court notes that it is not settled whether the mixed-
motive standard is applicable to age discrimination claims
brought under CFEPA after the Supreme Court's decision in Gross,
which held that mixed-motive cases are not permitted under the
ADEA.  See Weisenbach v. LQ Mgmt., No. 3:13-CV-01663 (MPS), 2015
WL 5680322, at *7 (D. Conn. Sept. 25, 2015).  But because the
court ultimately concludes, as discussed below, that Azam has
not met his initial burden under Price Waterhouse with respect
to his age discrimination claims, the court need not reach that
question and simply assumes that it is still applicable for
purposes of this ruling.

F.3d 55, 60 (2d Cir. 1997)).  "Evidence potentially warranting a
Price Waterhouse burden shift includes, inter alia, policy
documents and evidence of statements or actions by
decisionmakers that may be viewed as directly reflecting the
alleged discriminatory attitude."  Id. at 173-74 (quoting
Raskin, 125 F.3d at 60-61).  "To warrant a mixed-motive burden
shift, the plaintiff must be able to produce a 'smoking gun' or
at least a 'thick cloud of smoke' to support his allegations of
discriminatory treatment."  Id. at 174 (quoting Raskin, 125 F.3d
at 61).

    Azam argues that there is direct evidence reflecting Yale's
discriminatory attitude here.  He points to comments made by
colleagues regarding his race, national origin, ancestry,
ethnicity, religion, and age.

    "The relevance of discrimination-related remarks does not
depend on their offensiveness, but rather on their tendency to
show that the decision-maker was motivated by assumptions or
attitudes relating to the protected class."  Tomassi v. Insignia
Fin. Grp., Inc., 478 F.3d 111, 116 (2d Cir. 2007), abrogated in
part on other grounds by Gross, 557 U.S. 167; Rose v. N.Y.C. Bd.
of Educ., 257 F.3d 156, 162 (2d Cir. 2001) (contrasting the
"stray remarks of a colleague" with "comments made directly to
her on more than one occasion by her immediate supervisor, who
had enormous influence in the decision-making process" and

finding the latter sufficient to be probative of
discrimination).  To determine whether a remark is stray or
probative, district courts in this circuit generally consider
four factors: "(1) who made the remark (i.e., a decision-maker,
a supervisor, or a low-level co-worker); (2) when the remark was
made in relation to the employment decision at issue; (3) the
content of the remark (i.e., whether a reasonable juror could
view the remark as discriminatory); and (4) the context in which
the remark was made (i.e., whether it was related to the
decision-making process)."  Henry v. Wyeth Pharm., Inc., 616
F.3d 134, 149 (2d Cir. 2010).  "In order for the remarks to be
deemed significant, the plaintiff must show their nexus to the
adverse employment decision."  Ragusa v. Malverne Union Free
Sch. Dist., 582 F. Supp. 2d 326, 340 (E.D.N.Y. 2008).  Although
"stray remarks in the workplace by persons who are not involved
in the pertinent decisionmaking process" may "suffice to present
a prima facie case" under McDonnell Douglas, they "would not
suffice, even if credited, to warrant a Price Waterhouse
charge."  Ostrowski v. Atl. Mut. Ins. Cos., 968 F.2d 171, 182
(2d Cir. 1992).

### 1.   CFEPA age discrimination claim

With respect to his age, Azam first points to a comment
made by Vander Veer, who during an interview for a position
which is not the subject of this case, said "[d]on't tell me

-16-

that you are that old," in response to Azam stating that he was familiar with the predecessor to Microsoft Excel.  (Shea Aff., Ex. A, at 50:2-12, 57:20-58:6.)  Second, after Azam applied for an investment analyst position in 2004, Jay Kang told Azam: "you don't fit the mold and we have young college graduates for these jobs."  (Pl.'s 56(a)2, Ex. 8, at 84:7-23.)  Third, he states that union personnel informed him that Yale did not want to hire Azam for the positions at issue in this case because of his age, (id. ¶ 59), that the person hired for the Senior Administrative Assistant 2 position was white and "lesser" qualified, (id. ¶ 18), and that the person hired for the Senior Administrative Assistant 2, Morse College position was "younger," (id., Ex. 6, at 52:13-16).

With respect to the first and second statements, Azam admits that neither Vander Veer nor Kang was involved in the hiring decisions as to any of the positions that are the subject of this case.  These comments are thus not material with respect to whether any of the decision makers in the positions at issue in this case were "motivated by assumptions or attitudes relating to the protected class."  Tomassi, 478 F.3d at 116. With respect to the third statement, it is inadmissible hearsay, on which Azam "cannot rely . . . in opposing a motion for summary judgment."  Tejada v. Wal-Mart Stores, Inc., No. CIV 3:06CV02049(AWT), 2009 WL 839020, at *7 (D. Conn. Mar. 30, 2009)

(quoting Burlington Coat Factory Warehouse Corp. v. Esprit De
Corp, 769 F.2d 919, 924 (2d Cir. 1985)).  Thus, Azam has
presented no relevant and admissible direct evidence of age-
based discrimination.

> **2.  Race, national origin, ancestry, ethnicity, and
> religion discrimination claims**

Azam presents the following evidence of comments made by
colleagues related to his race, national origin, ancestry,
ethnicity, and religion:

- In or about 2001, after the September 11, 2001
  attacks, Brown, then his supervisor, asked Azam:
  "You are not going to blow up this building,
  right[?]"  (Shea Aff., Ex. C, at 29.)

- In or about 2001, Brown made statements to Azam
  "as if [he] was responsible for [the attacks]."
  (Id., Ex. C, at 29.)

- Between approximately 2006 and 2008, after Azam
  began to grow a beard, Brown told Azam that he
  was "becoming just like [a] terrorist." (Pl.'s
  56(a)2, Ex. 21, at 42:15-19.)

- Between approximately 2006 and 2008 Brown said to
  Azam when Azam once became angry: "[y]ou are not
  going to blow up this building."  (Shea Aff., Ex.
  A, at 42:16-43:5.)

- At an unspecified time at an office party, an
  unidentified individual who was the spouse of a
  co-worker "started arguing and blaming [Azam] and
  Muslims for 9/11."  (Id., Ex. C, at 30.)

- In or about 2016, Rondina, a colleague, said
  loudly several times: "The terrorists are here
  and somebody's going to kill me."  (Id., Ex. A,
  at 43:6-12.)  Ovelar overheard this comment and
  did not take any action.

- In or about 2017, O'Donnell, a colleague, claimed
  that Azam stated in a threatening manner that he

> would "go postal" when he became upset about
> something.  (Pl.'s 56(a)2, Ex. 4, at ¶ 29; id.,
> Ex. 22, at 90:4-7.)  Azam disputes that he used
> the term "go postal" and argues that O'Donnell's
> use of this term is evidence of a discriminatory
> attitude.

Azam admits that these comments were not made in the context of the hiring process, nor were any of these individuals involved in the hiring process for any of the positions at issue in this case in any way.  Azam even admits that those who made the hiring decisions did not contact his current supervisor, Ovelar, whom he alleges displayed evidence of animus when she did not take action against Rondina based on his comments in 2016.  Further, Azam admits that no person involved in the hiring process made any comments that suggested that his race, national origin, ancestry, ethnicity, or religion was a factor in the hiring decision.  (Shea Aff., Ex. A, at 75:19-24.)  Also, four of the seven statements cited were made at least eight years prior to the earliest job application at issue here.  Another statement has no identified timeframe and was made by someone apparently not employed by Yale.  And both recent statements were made by rank-and-file colleagues, not supervisors or individuals involved in the hiring decisions with respect to the positions at issue.

These stray remarks, made by individuals not involved in the hiring process and in most instances temporally distant from

-19-

the job applications at issue are thus not material with respect
to whether any of the decision makers with respect to the
positions at issue in this case were "motivated by assumptions
or attitudes relating to the protected class." Tomassi, 478
F.3d at 116.[2]  Azam has presented no direct evidence of
discriminatory intent with respect to the positions at issue
here.  Thus, Yale is entitled to summary judgment under the
Price Waterhouse mixed-motive standard, and Azam must therefore
establish his case under the McDonnell Douglas framework.

**B.   McDonnell Douglas Analysis**

In a pretext case, the Title VII, ADEA, and CFEPA claims
are all analyzed under the three-step burden-shifting framework
of McDonnell Douglas.  See Bentley v. AutoZoners, LLC, 935 F.3d
76, 88 (2d Cir. 2019) (CFEPA); Kirkland v. Cablevision Sys., 760
F.3d 223, 225 (2d Cir. 2014) (Title VII); Leibowitz v. Cornell
Univ., 584 F.3d 487, 498 (2d Cir. 2009) (ADEA).  Under that
framework, the plaintiff has the initial burden to establish his
prima facie case of employment discrimination.  See Fox v.

---

[2] He also states that "body gesture and facial expression
were there" in his interviews, although his testimony does not
specify during which interviews these occurred.  (Pl.'s 56(a)2,
Ex. 7, at 53:18-54:3.)  Additionally, Azam was not interviewed
for any of the positions at issue in this case, so they would
not constitute direct evidence as to the discriminatory attitude
of the decision makers at issue in this case.  Thus, even
viewing this in light of the comments made, it does not create a
"smoking gun" or a "thick cloud of smoke" evidencing
discrimination.

Costco Wholesale Corp., 918 F.3d 65, 71 (2d Cir. 2019).  This "burden of proof that must be met to permit an employment discrimination plaintiff to survive a summary judgment motion at the prima facie stage is de minimis."  Chambers v. TRM Copy Centers Corp., 43 F.3d 29, 37 (2d Cir. 1994).

To establish a prima facie case under both Title VII and the ADEA for discriminatory failure to promote, the plaintiff must establish that: "(1) he is a member of a protected class, (2) he was qualified for the job for which he applied, (3) he was denied the job, and (4) the denial occurred under circumstances that give rise to an inference of invidious discrimination."  Vivenzio v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010) (Title VII); see Duckett v. Foxx, 672 F. App'x 45, 47 (2d Cir. 2016) (ADEA).[3]

If the plaintiff establishes his prima facie case, the burden then shifts to the defendant to "articulate 'some legitimate, nondiscriminatory reason for the adverse employment action.'"  Cortes v. MTA N.Y.C. Transit, 802 F.3d 226, 231 (2d Cir. 2015) (quoting Maraschiello v. City of Buffalo Police Dep't, 709 F.3d 87, 92 (2d Cir. 2013)).  If the defendant meets

---

[3] Substantively, CFEPA claims are analyzed under the same legal framework as claims under Title VII and the ADEA.  See Bentley, 935 F.3d at 88 (CFEPA claims based on Title VII-protected classes); McKinstry v. Sheriden Woods Health Care Ctr., Inc., 994 F. Supp. 2d 259, 263 n.1 (D. Conn. 2014) (CFEPA claims based on age).

its burden of articulating a nondiscriminatory reason, then the burden again shifts back to the plaintiff, who "must prove that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." Woodman v. WWOR-TV, Inc., 411 F.3d 69, 76 (2d Cir. 2005) (internal quotation marks omitted) (quoting Roge v. NYP Holdings, Inc., 257 F.3d 164, 168 (2d Cir. 2001)). "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981).

Here, Yale does not dispute that Azam is a member of protected classes under Title VII and the ADEA and that he suffered an adverse employment action because he applied for three positions but was not hired for those positions. But Yale disputes that Azam can establish his prima facie case by showing that he was qualified for the positions and that Yale's decisions not to promote him occurred under circumstances which give rise to an inference of discrimination. Yale argues further that even if Azam could establish his prima facie case, Yale has offered legitimate, non-discriminatory reasons why it did not promote him and Azam has failed to create a genuine issue of material fact as to whether those proffered reasons were pretextual.

1.   Azam's **prima** **facie** case

    a.   **Whether he was qualified**

"[T]he qualification necessary to shift the burden to defendant for an explanation of the adverse job action is minimal; plaintiff must show only that he 'possesses the basic skills necessary for performance of [the] job.'" Slattery v. Swiss Reins. Am. Corp., 248 F.3d 87, 92 (2d Cir. 2001) (second alteration in original) (quoting Owens v. N.Y.C. Housing Auth., 934 F.2d 405, 409 (2d Cir. 1991)).  To establish his prima facie case, Azam does not have "an obligation to anticipate and disprove . . . the employer's proffer of a legitimate, non-discriminatory basis for its decision." Id.  Whether an employee is qualified for a position "depends on the employer's criteria for the performance of the job--not the standards that may seem reasonable to the jury or judge." Thornley v. Penton Publ'g, 104 F.3d 26, 29 (2d Cir. 1997).  "Therefore, in order to establish a prima facie case of discrimination, [Azam] must show that [he] met the defendant's criteria for the position." Williams v. R.H. Donnelley, Corp., 368 F.3d 123, 127 (2d Cir. 2004).  However, given that Azam's burden at this stage is de minimis, and considering that Yale's proffered non-discriminatory reason was that Azam was not qualified, the court assumes for purposes of this ruling that Azam has met his minimal burden of establishing this part of his prima facie case

-23-

and addresses Azam's qualifications for the positions in the
context of his arguments that Yale's proffered non-
discriminatory reasons that he was not qualified for the
positions are pretextual.

> **b.   Whether the circumstances give**
> **rise to an inference of discrimination**

As part of his <u>prima facie</u> case, Azam must also show that
the adverse employment decisions "occurred under circumstances
that give rise to an inference of invidious discrimination."
<u>Vivenzio</u>, 611 F.3d at 106.  "[A] showing of disparate treatment,
while a common and especially effective method of establishing
the inference of discriminatory intent necessary to complete the
<u>prima facie</u> case, is only one way to discharge that burden."
<u>Abdu-Brisson v. Delta Air Lines, Inc.</u>, 239 F.3d 456, 468 (2d
Cir. 2001).

> [T]he inference of discriminatory intent [can] be
> drawn in several circumstances including, but not
> limited to: "the employer's continuing, after
> discharging the plaintiff, to seek applicants from
> persons of the plaintiff's qualifications to fill that
> position; or the employer's criticism of the
> plaintiff's performance in ethnically degrading terms;
> or its invidious comments about others in the
> employee's protected group; or the more favorable
> treatment of employees not in the protected group; or
> the sequence of events leading to the plaintiff's
> discharge."

<u>Id.</u> (quoting <u>Chambers</u>, 43 F.3d at 37).

"While it is true that the stray remarks of a decision-
maker, without more, cannot prove a claim of employment

discrimination, we have held that when 'other indicia of
discrimination are properly presented, the remarks can no longer
be deemed stray, and the jury has a right to conclude that they
bear a more ominous significance.'" Id. (quoting Danzer v.
Norden Systems, Inc., 151 F.3d 50, 56 (2d Cir. 1998)) (citing
Woroski v. Nashua Corp., 31 F.3d 105, 109-10 (2d Cir. 1994)).
Also, even where a "pattern of derogatory statements could be
dismissed as stray" they may nonetheless help establish a prima
facie case when viewed in light of general evidence about the
employer's focus on or attitude about employees' protected
statuses.  See id.; Ostrowski, 968 F.2d at 182 (noting that
"stray remarks in the workplace by persons who are not involved
in the pertinent decisionmaking process . . . . may suffice to
present a prima facie case" under McDonnell Douglas).

    As detailed above, Azam has pointed to statements by
colleagues and his supervisors at Yale regarding his race,
national origin, ancestry, ethnicity, religion, or age.  For
example, there is the statement by a colleague that he was
"becoming just like [a] terrorist."  (Pl.'s 56(a)2, Ex. 21, at
42:19.)  There was also an incident during one of Azam's
interviews for another position in which a decision maker
blurted out: "Don't tell me you are that old."  (Id., Ex. 29, at
50:2-12.)  Ovelar, Azam's supervisor, took no action after
hearing a colleague loudly state that "[t]he terrorists are here

-25-

and somebody's going to kill me."  (Shea Aff., Ex. A, at 43:6-12.)  Azam has also testified that someone at Yale told him with respect to another position for which Azam applied that he did not "fit the mold" of who they were looking for to fill the position because Yale hires "young college graduates for those jobs."  (Pl.'s 56(a)2, Ex. 8, at 84:7-23.)  Azam also testified that "[t]he person who is hired is a white Caucasian over and over and over again."  (Shea Aff., Ex. A, at 59:9-10.)  This evidence satisfies Azam's minimal burden of showing that Yale's decisions occurred under circumstances which would allow an inference of discriminatory motivation.  Thus, Yale has the burden to provide legitimate, non-discriminatory reasons for its failure to promote Azam.

> **2.   Yale's non-discriminatory reasons and Azam's evidence of pretext**

Yale's proffered reasons for not promoting Azam are that he was not the most qualified candidate for the positions to which he applied.  With respect to each position, Yale told Azam via letter the specific qualifications for which he did not demonstrate sufficient proficiency compared to other candidates. But Azam argues that he was in fact highly qualified for all the positions to which he applied, and Yale's false explanation to the contrary is evidence of pretext.

"The Supreme Court teaches that 'a reason cannot be proved
to be a pretext for discrimination unless it is shown both that
the reason was false, and that discrimination was the real
reason.'" Gallo v. Prudential Residential Servs., LP, 22 F.3d
1219, 1225 (2d Cir. 1994) (quoting St. Mary's Honor Ctr. v.
Hicks, 509 U.S. 502, 515 (1993)). "The plaintiff must 'produce
not simply some evidence, but sufficient evidence to support a
rational finding that the legitimate, non-discriminatory reasons
proffered by the [defendant] were false, and that more likely
than not [discrimination] was the real reason for the
[employment action].'" Weinstock, 224 F.3d at 42 (alterations
in original) (quoting Van Zant v. KLM Royal Dutch Airlines, 80
F.3d 708, 714 (2d Cir. 1996)).

> What this means in the summary judgment context is
> that the plaintiff must establish a genuine issue of
> material fact either through direct, statistical or
> circumstantial evidence as to whether the employer's
> reason for [refusing to promote] her is false and as
> to whether it is more likely that a discriminatory
> reason motivated the employer to make the adverse
> employment decision.

Gallo, 22 F.3d at 1225. "A plaintiff's evidence at the third
step of the McDonnell Douglas analysis must be viewed as a whole
rather than in a piecemeal fashion." Walsh v. N.Y.C. Hous.
Auth., 828 F.3d 70, 76 (2d Cir. 2016).

"Courts have recognized that an employer's disregard or
misjudgment of a plaintiff's job qualifications may undermine

the credibility of an employer's stated justification for an employment decision." Byrnie v. Town of Cromwell Bd. of Educ., 243 F.3d 93, 103 (2d Cir. 2001).  But "[t]he law is well-established that federal courts hearing discrimination claims do not 'sit as a super-personnel department' to reexamine a firm's business decisions about how to evaluate the relative merits of education and experience in filling job positions." Newsom-Lang v. Warren Int'l, Inc., 80 F. App'x 124, 126 (2d Cir. 2003) (quoting Scaria v. Rubin, 117 F.3d 652, 655 (2d Cir. 1997) (per curiam)).  "The fact that a court may think that the employer misjudged the qualifications of the applicants does not in itself expose him to Title VII liability, although this may be probative of whether the employer's reasons are pretexts for discrimination." Burdine, 450 U.S. at 259.

> When a plaintiff seeks to prevent summary judgment on the strength of a discrepancy in qualifications ignored by an employer, that discrepancy must bear the entire burden of allowing a reasonable trier of fact to not only conclude the employer's explanation was pretextual, but that the pretext served to mask unlawful discrimination.  In effect, the plaintiff's credentials would have to be so superior to the credentials of the person selected for the job that "no reasonable person, in the exercise of impartial judgment, could have chosen the candidate selected over the plaintiff for the job in question."

Byrnie, 243 F.3d at 103 (quoting Deines v. Tex. Dep't of Protective & Regulatory Servs., 164 F.3d 277, 280-81 (5th Cir. 1999)).

Notably, Azam has presented no admissible evidence of the credentials or characteristics of the individuals selected over him for any of the positions at issue here.  Rather, he relies only upon hearsay statements by his union representative who reportedly told him that the person hired for the Senior Administrative Assistant 2 position was white and "lesser" qualified, (Pl.'s 56(a)2 ¶ 18), and that the person hired for the Senior Administrative Assistant 2, Morse College position was "younger," (id., Ex. 6, at 52:13-16).  That testimony, however, is inadmissible hearsay on which he "cannot rely . . . in opposing a motion for summary judgment." Tejada, 2009 WL 839020, at *7 (quoting Burlington Coat Factory Warehouse Corp., 769 F.2d at 924); see also McKinney v. Dep't of Transp., 168 F. Supp. 3d 416, 425 (D. Conn. 2016) (hearsay evidence not sufficient to establish purported comparators).  "[U]nsupported allegations do not create a material issue of fact." Weinstock, 224 F.3d at 41.  Azam cannot rely on hunches which he failed to substantiate during discovery to defeat Yale's motion for summary judgment.  See, e.g., Percoco v. Lowe's Home Ctrs., LLC, 208 F. Supp. 3d 437, 446-47 (D. Conn. 2016) ("Defendant has discharged its duty by showing that Plaintiff, who has been afforded a full and fair opportunity for discovery, has not produced any evidence concerning her replacement's age. Plaintiff cannot defeat summary judgment by relying on her

failure to confirm unsubstantiated hunches during discovery."); Jennings v. Wyeth Pharm., Inc., No. 07 CIV. 953 (CLB), 2008 WL 11439529, at *8 (S.D.N.Y. May 7, 2008), aff'd, 348 F. App'x 688 (2d Cir. 2009) ("Plaintiff has not offered any evidence that these reasons were pretextual, other than 'a good hunch.'  This is not enough to survive summary judgment.").

Senior Administrative Assistant 2 position (No. 37619BR). Yale's proffered non-discriminatory reason for failing to promote Azam to the Senior Administrative Assistant 2 position is that he was not the most qualified candidate for the position.  In a July 14, 2016 letter, Marshall noted that Yale was looking for a candidate with the highest level of proficiency and experience in staff supervisory experience and familiarity with Banner.  In the letter, Marshall stated that Yale's "highest preference was for a candidate who demonstrated evidence of having the most proficiency in these areas," and that it selected "another candidate who most closely meets the skills and qualifications of the position."  (Marshall Aff., Ex. D, at 1.)

Azam contends this explanation is false and pretextual because he clearly met the qualifications for the position. With respect to staff supervisory experience, he points to his cover letter, which states that he "[s]upervised, guided and trained research & administrative staff."  (Id., Ex. C, at 1.)

-30-

But the resume he submitted reflected that he had those experiences in his positions with the Pakistan Agricultural Research Council from 1992 to 2000.  Also, he admitted in his deposition testimony that his positions at Yale were classified "Clerical and Technical," as opposed to "Managerial and Professional."  He further admitted that the latter positions involve staff supervision, while the clerical and technical positions do not.  With respect to his familiarity with Banner, Azam admits that his application did not include anything that clearly stated he was familiar with Banner.  Rather, he faults Yale for not contacting his supervisor to determine his familiarity with Banner.  But he points to no authority suggesting that Yale was under an obligation to contact his supervisor.

Azam's evidence may have satisfied his de minimis burden of demonstrating that he was qualified for the position, but "[i]f the plaintiff's evidence was barely sufficient to make out a prima facie case, it may not be sufficient to establish discrimination after the defendant has proffered a neutral rationale."  Stern, 131 F.3d at 312.  Azam has not presented evidence from which a reasonable juror could conclude that Yale's proffered reason as to the Senior Administrative Assistant 2 position was both false and a pretext for discrimination, especially in light of the fact that it is

undisputed that his resume did not reflect familiarity with
Banner.  At most, he has presented some evidence that Yale may
have misjudged his qualifications and experience.  Moreover,
Azam has presented no admissible evidence about who was
interviewed or offered the position or their respective
qualifications.  Thus, even if he created a genuine issue as to
whether Yale misjudged his qualifications, he still has
presented no evidence that Yale's statement that he was not the
most qualified candidate for the position was false and
pretextual.

Assistant University Registrar (No. 38875BR).  Yale's
proffered non-discriminatory reason for failing to promote Azam
to the Assistant University Registrar position is that he was
not the most qualified candidate for the position.  In a
November 28, 2016 email, Marshall noted that Yale was looking
for a candidate with the highest level of proficiency and
experience in a central registrar's office, working knowledge of
Banner and other integrated student information systems, and a
proven ability to work well with all levels of faculty and
staff.[4]

---

[4] As Azam notes, the specific requirement of the position
was not a "proven ability to work well with all levels of
faculty and staff," but rather was: "Demonstrated ability to
work effectively with and foster collaboration among a wide
range of individuals and constituencies in a large, complex

With respect to the education and experience criterion,
Azam admits that he has no experience working in a central
registrar's office but contends that he is nonetheless still
highly qualified because "there was alternate experience that
was sufficient and that [he] had."  (Pl.'s 56(a)2 at ¶ 25.)  The
position listed as a requirement that the candidate possess a
"Bachelor's degree and four years of experience in a central
registrar's office or in a comparable area of academic
administration or an equivalent combination of education and
experience."  (Marshall Aff., Ex. B, at 2.)  Azam argues that
his "three master's degrees and academic administration
experience as an Undergraduate Registrar clearly met and exceed
the requirements."  (Pl.'s Mem. of Law Opp'n Mot. Summ. J.
("Pl.'s Opp'n") at 14, ECF No. 65.)  He contends that his
experience working <u>with</u> the central registrar's office, combined
with his three master's degrees, should be enough to substitute
for experience <u>in</u> a central registrar's office.  But Azam's
subjective belief that his education and related experience
should have been sufficient does not create a genuine issue of
material fact.  "Defendant's decisions regarding the
professional experience and characteristics sought in a
candidate . . . are entitled to deference."  <u>Sarmiento v. Queens</u>

---

academic environment.  Ability to negotiate successfully and
under pressure."  (Marshall Aff., Ex. B, at 2.)

Coll., 386 F. Supp. 2d 93, 97-98 (E.D.N.Y. 2005).  "Where an
employer's explanation, offered in clear and specific terms, 'is
reasonably attributable to an honest even though partially
subjective evaluation of . . . qualifications, no inference of
discrimination can be drawn.'"  Byrnie, 243 F.3d at 105 (quoting
Lieberman, 630 F.2d at 67).

     With respect to his "ability to work effectively with and
foster collaboration among a wide range of individuals and
constituencies," Azam refers to numerous letters of
recommendation regarding such an ability on his part to rebut
Yale's statement that he did not demonstrate such an ability.
But again, Azam's subjective belief that he met the
qualifications of the position does not create a genuine issue
of material fact as to pretext.  Additionally, with respect to
Yale's statement about his familiarity with Banner, Azam points
out that his resume for this position reflected that he was
"[a]dept in Banner."  (Marshall Aff., Ex. E, at 2.)  But again,
Yale's statement was that another candidate demonstrated a
higher level of proficiency with Banner.

     Therefore, as with the prior position, Azam has not
presented evidence from which a reasonable juror could conclude
that Yale's proffered reason with respect to the Assistant
University Registrar position was both false and a pretext for
discrimination.  At most, he has presented some evidence that

Yale may have misjudged his qualifications and experience.
Moreover, Azam has presented no admissible evidence about who
was interviewed or offered the position or their respective
qualifications.  Thus, even if he created a genuine issue as to
whether Yale misjudged his qualifications, he still has
presented no evidence that Yale's statement that he was not the
most qualified candidate for the position was false and
pretextual.

Senior Administrative Assistant 2, Morse College (No.
40580BR).  Yale's proffered non-discriminatory reason for
failing to promote Azam to the Senior Administrative Assistant
2, Morse College position is that he was not the most qualified
candidate for the position.  In a December 7, 2016 letter,
Silverman noted that Yale was looking for a candidate with the
highest level of familiarity with Yale College academic and
undergraduate regulations.  He and Martindale also state that
Azam's application did not demonstrate evidence of having
proficiency in attention to detail and confidentiality.

Azam disputes that he did not demonstrate familiarity with
Yale College academic and undergraduate regulations.  He points
to his cover letter, which states that he had experience
"[a]ssist[ing] and appris[ing] Director Undergraduate Studies
(DUS), faculty, staff and students about academic policies &
procedure, FERPA and other academic regulations."  (Silverman

-35-

Aff., Ex. A, at 3.)  But Yale's statement was not that Azam was not proficient but, rather, that another candidate demonstrated a higher level of proficiency with the regulations.

With respect to Azam's attention to detail, Azam admits that his application contained typographical errors.  However, he argues that he nonetheless has the requisite attention to detail because his supervisor, as well as Silverman and Martindale, have made typographical errors.  But again, Azam's subjective belief that he was qualified for the position does not create a genuine issue of material fact, especially given the subjective nature of evaluating an applicant's proficiency in attention to detail.  See Byrnie, 243 F.3d at 105.

With respect to Azam's proficiency in "[m]aintaining confidential academic files for current and former students," (Martindale Aff., Ex. A, at 1), he asserts that Yale's mentioning of confidentiality as a concern "is not only erroneous, it reveals a discriminatory basis for denying Mr. Azam an interview."  (Pl.'s Opp'n at 26.)  Azam argues that "[t]he idea that Mr. Azam was not competent in keeping information confidential was based on the concern that defendant decision-makers, in this case, Alexa Martindale and Joel Silverman, had with him being a Muslim, Pakistani."  (Id.) However, Azam provides no evidence to allow a reasonable juror to reach this conclusion--only speculation.

Moreover, Azam's additional evidence fails to create a genuine issue as to whether Yale's disregard of his qualifications evidences that, more likely than not, discrimination was the real reason for its adverse actions.  He has not marshaled evidence sufficient for a reasonable jury to conclude that the proffered reasons were not only false, but also that discrimination was the real reason for Yale's adverse employment decisions.

The stray remarks of colleagues or individuals at Yale do not create a genuine issue as to whether Yale discriminated against Azam with respect to the positions at issue here.  As discussed above, Azam admits that none of the individuals who made comments about his age was involved in the decision-making process for any of the positions at issue here.  Also, Azam admits that the remarks made about his race, national origin, ancestry, ethnicity, religion, and age were not made by individuals involved in the hiring process for any of the positions at issue in this case and also were not made in the context of the hiring process.  Further, Azam admits that no person involved in the hiring process made any comments that suggested that his race, national origin, ancestry, ethnicity, religion, or age was a factor in the hiring decision.  (Shea Aff., Ex. A, at 75:19-24.)  This is significant given that even "stray remarks of a decision-maker, without more, cannot prove a

claim of employment discrimination." <u>Abdu-Brisson</u>, 239 F.3d at
468 (emphasis added).  The more recent remarks were made by
rank-and-file colleagues not involved in the hiring process for
the positions at issue, and the other remarks were made a
considerable time prior to the job applications at issue here.
These stray remarks do not support a reasonable inference that
Yale intentionally discriminated against Azam with respect to
the positions at issue here.

Finally, Azam contends that discrimination may be inferred
from the fact that his Muslim religion, Southeast Asian
heritage, and age are "readily apparent" from a review of his
file and resume and from his being well-known at Yale.  But
evidence that Yale simply knew of his protected statuses,
without more, is not sufficient evidence to withstand summary
judgment on a discrimination claim.  <u>See</u> <u>Oluwo v. N.Y. State</u>
<u>Ins. Dep't</u>, No. 94 CIV. 2930 (JES), 1997 WL 311937, at *6
(S.D.N.Y. June 9, 1997).

In sum, Azam was required to "produce not simply some
evidence, but sufficient evidence to support a rational finding
that the legitimate, non-discriminatory reasons proffered by the
[defendant] were false, and that more likely than not
[discrimination] was the real reason for the [employment
action]." <u>Weinstock</u>, 224 F.3d at 42 (alterations in original)
(quoting <u>Van Zant</u>, 80 F.3d at 714).  Azam has produced some

evidence, but the question here is whether that evidence, "taken as a whole, supports a sufficient rational inference of discrimination." Weinstock, 224 F.3d at 42.  "To get it to the jury, 'it is not enough . . . to disbelieve the employer"; there must be evidence to allow the jury to also "believe the plaintiff's explanation of intentional discrimination." Id. (quoting St. Mary's, 509 U.S. at 519).  Viewed as a whole, Yale's possible misjudging of some of Azam's qualifications, the stray remarks of colleagues who were not involved in the decision-making process for the positions at issue here, and Azam's speculation are not sufficient to support a reasonable inference of intentional discrimination.  Therefore, Yale is entitled to summary judgment on Azam's claims.

**IV.  CONCLUSION**

For the reasons set forth above, Yale's Motion for Summary Judgment (ECF No. 55) is hereby GRANTED.  The Clerk shall enter judgment accordingly and close this case.

It is so ordered.

Dated this 29th day of September 2020, at Hartford, Connecticut.

/s/AWT
Alvin W. Thompson
United States District Judge
